THOMAS H. ABBOTT AND WIFE v. THE INTERNATIONAL BUILDING
AND LOAN ASSOCIATION.

No. 100.

**1. Mistake.**

Where the contract and exhibits made a part thereof correct a mistake therein, such mistake should be corrected.   See example............. 474

**2. Building and Loan Associations—Usury.**

Where a shareholder in a loan association pays a premium for the privilege of borrowing from the association, and such premium with the stipulated interest to be paid upon the money borrowed together amount to over the statutory limit, such loan is usurious, and all the payments of interest are applied by the law upon the principal borrowed..................................................................... 475

**3. Case Overruled.**

Building and Loan Association v. Abbott, 85 Texas, 220, overruled; in that in the decision material facts were not noticed.................. 475

86  467
86  479
86  467
90  487

Error to Court of Civil Appeals for Fourth District, in a case appealed from District Court of Bexar County.

The conclusions of fact filed in Court of Civil Appeals are here given:

1. That on or about January ——, 1884, plaintiff Thomas H. Abbott purchased seven shares of stock of the first series in defendant corporation's capital stock, and thereafter, in 1886, purchased six shares of the fifth series in and of defendant corporation's stock, and paid in to the defendant corporation on account of said stock monthly, after he acquired the same, at the rate of $1 per month per share, aggregating the sum of $923.

2. That on the 16th day of April, 1886, the plaintiff borrowed from the defendant corporation the sum of $1440; that is to say, he bid for the sum of $2600, and obtained the same at a premium of 50 per cent, and therefore was entitled to obtain from said defendant corporation the sum of $1300; but having been a member of defendant's corporation for two years prior thereto, he was given $140 additional, being in all the sum of $1440 in cash; and in consideration of such loan the said plaintiffs, Thomas H. Abbott and wife, executed to the defendant the following note:

"$2600.　　　　　　　　　San Antonio, Texas, April 12, 1886.

"On or before the maturity of the first and fifth series of stock of the International Building and Loan Association, we promise to pay to the order of the International Building and Loan Association, at its principal office in San Antonio, Texas, the sum of $2600, with interest at the rate of 6 per cent per annum from the date hereof until paid; also, the further sum of $26 per month from this date until maturity of the aforesaid stock, as provided for in the by-laws of said association, which by-laws are made and taken to be a part hereof."

That defendant explained to plaintiff at the time of making the bid for said loan the manner of operating the business of said corporation, and intended to make said instrument for the sum of $2600 with interest thereon at the rate of 6 per cent per annum from the date thereof, and the further sum of $13 per month instead of $26 per month, as stated in said note, but said note and the accompanying deed of trust was presented to plaintiffs for signature, and nothing said of any mistake therein until this suit was brought; that thereafter plaintiffs did in fact pay to the said defendant the sum of $13 per month as interest and $13 per month as dues on stock up to the month of November, 1890, when plaintiffs discontinued all payments on account of said stock.

3. That to secure said loan, the plaintiffs, Thomas H. Abbott and wife, executed to the defendant Holland, as trustee, a conveyance of the property set out in plaintiff's petition, conditioned that if said note was paid according to its terms and conditions, that then the said instrument should

become null and void; but if the plaintiffs failed to pay the said sum of money, or any interest payments thereon, or any dues on their stock in the manner and the time provided by defendant's by-laws, that then the defendants might proceed to foreclose their lien on the said property and shares of stock to satisfy said debt. And further, that if the plaintiffs fail to keep the property insured for the benefit of the defendants, that then the defendants should insure the same and charge the premium therefor to the plaintiffs; and if any judicial proceedings were resorted to for the purpose of enforcing the said note or deed of trust, that then plaintiffs should further pay the reasonable attorney fees therefor.

4. That thereafter plaintiffs did pay to the defendant as interest on said loan the sum of $13 per month up to and including the month of November, 1890, aggregating the sum of $715, and thereafter plaintiffs ceased and refused to make any further payments on account of the said interest.

5. That thereafter, during the years 1891 and 1892, plaintiffs failed and refused to insure said property for the benefit of defendants, and defendants caused the same to be insured, and paid as premiums for said insurance the sum of $20.

6. That thereafter, in the month of June, 1891, the defendant Holland, as trustee, under and by virtue of the terms of said deed of trust, advertised the said property for sale to satisfy the said claim for $2600, and paid for advertising the sum of $13.35, when such sale was enjoined at the instance of plaintiffs in this suit.

7. That defendant's by-laws at the time plaintiffs acquired their stock and borrowed the said sum of money provided as follows:

"Article 2. It is hereby declared that the purpose of the formation of this corporation is to purchase and sell real estate in the city of San Antonio and in Bexar County, Texas, and to improve the same; to lend money on real estate security in said city and county on the stock of the members of this corporation, and principally to aid and assist its members in acquiring, improving, and holding real estate in said city and county, and particularly to aid and assist its members in acquiring homesteads for themselves and their families; also to borrow money of other persons not members of this association."

"Article 5. The shares of stock in this corporation may be issued in one or more successive series, in such amounts as the board of directors may determine or the by-law prescribe. The said stock to be paid in in monthly installments of $1 per month per share. Each and every shareholder of each and every share of stock held by him or her in this corporation shall pay into the treasury in lawful money, on or before the second Monday of each and every month, the sum of $1 until such shares of the series of stock upon which such monthly payment is made shall reach the value of $200, when he or she or they shall be paid for each share of such

stock the sum of $200. and the said stock shall thereupon revert to the corporation, and shall be cancelled. Each and every share of stock held by any shareholder shall be liable for and subject to a lien for the satisfaction of any unpaid installments by such shareholder.

"Article 6. The board of directors shall hold stated meetings on the second Thursday of each and every month. At each stated meeting the money in the treasury shall be offered to loan in open meeting, at a rate of interest not to exceed 8 per cent per annum, and the stockholder who shall bid the highest premium to be fixed in the by-laws for the preference of the priority of loan, shall be entitled to receive a loan not to exceed in amount the sum of $200 per share of stock held by such borrowing shareholder. The premium bid by the borrowing stockholder for the preference of loan shall be paid in cash before the loan is consummated."

Fourth. That at said date of said organization of defendant corporation, and since then at all times, its by-laws provided as follows, to-wit:

"Article 1, Section 2. Each share of stock shall entitle the holder to a loan of $200.

"Article 2, Section 1. On each share of stock there shall be paid in, on or before the second Monday of each and every month, the sum of $1.

"Article 2, Section 2. Whenever it shall appear on the books of the association that the stock of any particular series is worth $200 per share, all arrears of monthly dues, fines, and otherwise shall become at once due, and the directors shall cause to be paid to the holder of each unpledged share in such series the sum of $200, less all arrears of fines, dues, or otherwise, and payment of dues on the stock of that series shall cease."

"Article 8, Section 1. Any stockholder wishing to withdraw his stock not pledged to the association shall give thirty days notice in writing, to be filed with the secretary. At the expiration of the said thirty days the withdrawing stockholder shall be entitled to receive the amount actually paid in on such stock, together with such interest or proportion of the profits as the board of directors shall fix and determine, deducting, however, all dues and fines charged against such withdrawing stockholder; provided, however, that at no time shall more than one-third of the funds in the treasury be applied to the demands of withdrawing stockholders without the consent of the board of directors."

"Article 9, Section 1. The president shall at each monthly meeting of the directors offer the money in the treasury, if over $200, for loan in open meeting; such loan to be disposed of to the highest bidder for priority right. The board of directors may from time to time fix a rate of premium below which shares shall not be redeemed."

"Article 9, Section 4. If the interest on any loan, or the dues on the shares upon which such loan is based, remain unpaid for more than three months, the board of directors may compel payment of principal, interest, and fines, by proceeding on the securities according to law."

"Article 9, Section 8. Each stockholder, for each and every share of stock held by him in this association, shall be entitled to receive a loan not exceeding $200, and he shall pay interest monthly at the rate of 6 per cent per annum for such loan from the first day of the month in which the award of loan is made. The premium paid for the preference of loan shall be paid in cash when the loan is consummated.

" Section 9. Every share of stock upon which a loan is effected shall be transferred to the association as collateral security, and every transfer of stock shall be on the books of the association, and no transfer shall be made while the owner thereof is indebted to the association.

" Section 10. Any stockholder may have a loan upon his stock at 12 per cent per annum interest, payable monthly; provided, that such loan shall not be allowed for a less period than six months; and provided, the dues paid in by such borrowing stockholder on the stock to be pledged are equal to or exceed the amount so loaned on said stock.

" Section 11. And if any borrower shall fail or neglect to keep in force his policy of insurance upon the property given this association as security for a loan, the secretary shall immediately cause a policy of insurance to be issued, and shall charge the same to the borrower with his next month's dues, and the borrower shall be fined $1 at the direction of the board of directors."

" Section 13. Should any borrower desire to repay the association the money advanced on or to redeem his shares, he shall repay to the association the money actually received and one-eighth of the premium for which such loan was made, for each year or fractional part thereof such borrower has had the use of the money.

" Section 14. Any borrower who has been a member of this association for one year, or who shall have paid twelve monthly installments upon his stock, shall receive a deduction of one-tenth of the premium bid by such borrower, for every year he has been such member, or for every year since the issuance of the stock to be pledged."

"Article 10, Section 1. Each and every stockholder who shall refuse or neglect to pay his monthly dues as often as the same may become payable, shall forfeit and pay the additional sum of 10 cents monthly on each and every dollar due by him, dues of each month to be taken separately."

" Section 4. Any stockholder who shall neglect to pay the monthly interest on his loan when the same becomes due, shall be fined for such neglect 10 cents upon each dollar of the interest due for that month."

That in June, 1891, the shares of stock in the first series of defendant's corporation were declared to be matured at the rate of the sum of $133.50 per share, and all the stockholders in defendant's corporation in said series whose shares were not pledged were paid said sum of $133.50 per share in cash, and all holders of stock in the fifth series whose shares were

not pledged were given paid up stock in defendant's corporation at the rate of $68 per share, and from said date, June 1, 1891, the by-laws of the defendant corporation and its mode of doing business were changed so that no dues on stock theretofore issued at the rate of $1 per month per share were collected, and no further stock issued under such arrangement, but all holders of shares in said association were given receipts for full paid up stock at their withdrawal values as before set out, to which arrangement or change the plaintiffs did not consent.

8. The reasonable attorney fees incurred by the defendants in this suit in enforcing the payment of their claim is $250.

9. That the plaintiffs have given no written notice of withdrawal of their shares of stock to the defendants, and the withdrawals of $133.50 per share of the first series to other stockholders were made in all cases where some had given written notice of withdrawal and others had not, and the issuance of paid up stock at withdrawal values was given to other shareholders without any written notice of withdrawal.

The appellants' assignment of error is as follows: "The court erred in its conclusion of law, that the contract entered into between Thomas H. Abbot and wife and the International Building and Loan Association was not usurious, because it appears from said contract and the evidence that the appellant Thomas H. Abbott had borrowed from said International Building and Loan Association the sum of $1440, and bound plaintiff by said contract to repay in satisfaction of said loan at the maturity of his stock the sum of $2600, together with interest thereon at the rate of 6 per cent per annum, making, together with interest and premium, more than 12 per cent per annum; and in order to pay said debt before maturity is required to pay in addition to said 6 per cent per annum on $2600 the sum of $1440, the amount originally borrowed, together with one-eighth of said premium of $1160, being $145 per annum for each year that the said appellant had said money, making greatly in excess of 12 per cent per annum for the use of the sums of money actually borrowed; and therefore the court should have rendered judgment in favor of plaintiffs and against defendant building and loan association for the sum of $553.50, and should have allowed defendants nothing for attorney fees, interest, insurance, and advertising."

The judgment of the District Court was affirmed by the Court of Civil Appeals.

*Upson & Bergstrom*, for plaintiffs in error.—All sums of money paid or agreed to be paid to the lender for the use of money loaned, whether denominated interest, premium, or otherwise, when amounting to more than 12 per cent per annum on the sums of money actually loaned, is usurious, and the lender under such a contract forfeits all right to demand or col-

lect interest on such contract.  Cassidy v. Jackson, 68 Texas, 287; Building Assn. v. Lane, 81 Texas, 369;  Building Assn. v. Robinson, 78 Texas, 163.

*B. L. Aycock*, for defendant in error, cited:  Building Assn. v. Lane, 81 Texas, 369; Building Assn. v. Abbott, 85 Texas, 220; Halfield v. Building Assn., 31 N. E. Rep., 532; Building Assn. v. Furey, 47 N. J. Eq., 410; Loan Assn. v. Haley, 139 Pa. St., 476; Dugan v. Lewis, 14 S. W. Rep., 102; Building Assn. v. Reeve, 19 S. W. Rep., 918.

BROWN, ASSOCIATE JUSTICE.—About January, 1884, Thomas H. Abbott subscribed for seven shares of the first series of stock in the International Building and Loan Association, and in 1886 he subscribed for six shares of the fifth series of the stock in said association, the shares being $100 each.

On the 16th day of April, 1886, Abbott borrowed from the association $1440, for which he gave the following note, joined by his wife:

"$2600.                    SAN ANTONIO, TEXAS, April 12, 1886.

"On or before the maturity of the first and fifth series of stock of the International Building and Loan Association, we promise to pay to the order of the International Building and Loan Association, at its principal office in San Antonio, Texas, the sum of $2600, with interest at the rate of 6 per cent per annum from the date hereof until paid; also the further sum of $26 per month from this date until maturity of the aforesaid stock, as provided for in the by-laws of said association, which by-laws are made and taken to be a part hereof."

To secure the payment of the above note, Abbott and wife executed and delivered to William Holland a deed of trust, conveying to him the property described in the petition, which deed contained the usual provisions for sale in case of failure to pay principal, interest, or monthly payments on stock.  The interest was to be paid monthly, and $1 on each share of stock to be paid each month.

Abbott paid the monthly installments on his shares of stock up to and including November, 1890, and paid the interest on the note for the same time, amounting to the sum of $715, when he refused to pay any more. In June, 1891, Holland advertised the property for sale, and Abbott sued out an injunction to restrain the sale.

Defendants answered, setting up the note and deed of trust, and alleging the failure and refusal of Abbott to pay the interest and monthly installments on the note, praying that the deed of trust be foreclosed and the property sold to pay the debt.  Defendant also alleged that the sum of $26 to be paid each month was inserted in the note by mutual mistake, and should have been $13.  The court found this to have been a mistake.

The District. Court gave judgment for the International Building and Loan Association against Thomas H. Abbott for $743.85, foreclosing the deed of trust, and ordering the land to be sold. The shares of stock pledged were by the court cancelled. This judgment was affirmed by the Court of Civil Appeals.

Plaintiff in error complains of the ruling of the court in holding that the mistake committed by inserting $26 for $13 in the note could be corrected, because it was not shown to be a mutual mistake. The note expressly made the by-laws a part of it. These by-laws prescribed that a shareholder should pay $1 per month on each share of stock, and there being thirteen shares would make $13 per month to be paid. This showed of itself that there was a mistake in inserting more than the by-laws allowed, and was properly corrected. The contract furnished within itself the evidence of the mistake.

Abbott claims that the note is usurious, and that he is entitled under the law to have all money paid as interest credited on the principal, and the balance of the principal settled out of the value of his matured stock. He also prays for a recovery of his six shares of stock in the possession of the defendant.

The by-laws of the defendant association required that each stockholder should for each month pay $1 upon each share of stock owned by him until each share should be of the value of $200, when the stock should be matured and surrendered to the association, the stockholder receiving the sum of $200 for each share, less any amount in which he might be indebted to the association. If a shareholder borrowed money from the association, he was required to transfer and deliver his shares of stock to it, to be held until they matured under the by-laws, when the debt would become due, the stock cancelled, and the sum due to the shareholder upon the shares applied to the payment of the debt.

If a shareholder who borrowed desired to pay off the debt and redeem his stock before the time that it matured, he could do so by paying the debt, and in addition to the interest already paid, pay the one-eighth part of the premium for each year that he had the use of the money.

The premium bid for the privilege of borrowing was a disguise for unlawful interest, and in fact was a sum to be paid for the use of money in addition to the specified rate of interest; and if the rate charged as interest and the premium amounted to more than 12 per cent per annum, the contract is usurious. Cassidy v. Jackson, 68 Texas, 287; El Paso Building and Loan Assn. v. Lane, 81 Texas, 369; Bexar Building and Loan Assn. v. Robinson, 78 Texas, 163.

The note was to fall due at the maturity of the stock. If there was no profit on the shares, the payment of $1 per month for two hundred months would make each share worth $200, which would mature the stock, and the note become payable at that time. The by-laws secure to

each shareholder the right to withdraw at any time as much as he may have paid in on it; hence there could be no loss to the stockholder, and the time of maturity of stock and note could not be postponed beyond two hundred months.

Giving to the defendant the benefit of the longest time for the maturity of the note, it would fall due, as before stated, at two hundred months from date. The premium ($1160) would then be paid in addition to the annual interest which had been before paid for the use of the sum of $1440 for that time. The premium paid would be at the rate of $5.80 per month or $69.60 per annum, which added to the annual interest, $156, would make the sum of $225.60 paid per annum for the use of the sum borrowed; that is, at the rate of about 15 per cent, which being in excess of the lawful rate, would make the note void for the interest, and all payments made as interest should be credited upon the principal.

If Abbott had desired to pay off the note before maturity of the stock, he must, in addition to the annual interest, have paid one-eighth of the premium for each year that he had the use of the money. If, for instance, at the end of the first year he wished to pay the note, he must pay the principal, $1440, and for the use of it for that year also pay $145 in addition to $156 interest already paid, making the sum of $301 paid for using $1440 during one year—a fraction more than 20 per cent. Abbott could not discharge this note at any time without paying more than 12 per cent per annum for the use of the money; hence it was unquestionably usurious.

When this case was before this court at a former term, it was considered alone upon the last proposition. A mistake was made in the calculation, by which the annual interest was omitted from the estimate of the sum paid for the use of the money, and thus it appeared to be less than 12 per cent on the money borrowed. The court under this error held the contract not to be usurious, but the mistake is evident to any one reading the opinion.

The Court of Civil Appeals found that Abbott paid as interest on this note the sum of $715, and that in June, 1891, the defendant association declared his seven shares of stock matured, and fixed a value on the same at $133.50 per share, which was paid to other stockholders of the same series; at this price the seven shares would amount to $934.50. The note being usurious, Abbott was entitled under the law to have the money paid as interest applied to the payment of the principal, and that the balance of the note be satisfied out of the sum due him on the stock. Adding to the $715 paid as interest the sum of $934.50 due for stock, would make the sum of $1649.50, from which deduct $1440, the principal of the note, and we have the sum of $209.50 balance due to Abbott in June, 1891. This sum he had a right to receive, together with his six shares

of stock of the fifth series, and he will be entitled to recover interest from the 1st day of July, 1891, on the balance due him, that date being the most definite time we can arrive at from the facts.

For the error committed in holding the note to be free from usury, the judgments of the District Court and the Court of Civil Appeals are reversed, and judgment is here rendered for the plaintiffs in error, Thomas H. Abbott and Johanna Abbott, that the injunction heretofore granted in this cause be perpetuated, and the defendants, William Holland and the International Building and Loan Association, be forever enjoined from enforcing in any manner the deed of trust executed by the plaintiffs in error and described in the petition. It is further ordered, that Thomas H. Abbott recover of the defendant the six shares of stock in said association held by it as security for the note mentioned and described herein, subject to all proper charges against it, if any; and also, that said Thomas H. Abbott have and recover of the said International Building and Loan Association the sum of $209.50, with interest at the rate of 8 per cent per annum from the 1st day of July, 1891, with all costs of this suit; and that this judgment be certified to the District Court for observance.

*Reversed and rendered.*

Delivered March 8, 1894.