INTERNATIONAL LIFE INS. CO. v. STUART et al. (No. 8787.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 2, 1918.)

1. ACCORD AND SATISFACTION ⊂⇒7(3)—PART PAYMENT OF DEBT—MISTAKE OF CREDITOR.

Where buyers of corporation stock knew that mistake was made in making too small the amount of the draft drawn on them for the purchase price, on payment of which they received the stock, and fraudulently concealed the fact, but afterwards admitted the mistake and promised to pay the balance due, they were liable to the seller for such balance.

2. EQUITY ⊂⇒8—MISTAKE—MUTUALITY.

A mistake which equity would relieve against must ordinarily be a mutual one, but, where a fact is known to one and not to the other, its suppression may constitute fraud.

3. PLEADING ⊂⇒33—MUTUAL MISTAKE.

An allegation of mutual mistake becomes immaterial where unilateral mistake of one party, known to the other party, is also sufficiently alleged.

4. CONTRACTS ⊂⇒10(4) — MUTUALITY — ACCEPTANCE BY PERFORMANCE.

Where buyer promises to purchase a certain amount of corporate stock at a certain price per

share, and the seller furnishes such amount under the agreement, the contract is not invalid for lack of mutuality, on the ground that at the time of the making of the offer the seller did not bind himself to furnish said amount of stock.

**5. GAMING ⬤⟶12—CONTRACT FOR FUTURE DELIVERY.**

The fact that at the time of making the contract for future delivery the party binding himself to sell has not the goods in his possession, and has no means of obtaining them for delivery otherwise than by purchasing them after the contract is made, does not invalidate the contract.

**6. APPEAL AND ERROR ⬤⟶934(2) — REVIEW — PRESUMPTIONS.**

It is the appellate court's duty to give the strongest probative effect to the evidence in favor of the judgment rendered below.

**7. CONTRACTS ⬤⟶328(1) — DEFENSES — GROSS NEGLIGENCE.**

Gross negligence in the seller's mistake in making the amount of his draft on the buyer too small is no defense to an action based on a promise by the buyer to make good the mistake.

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Action by R. T. Stuart against the International Life Insurance Company and others. From judgment for plaintiffs, the named defendant appeals. Affirmed.

Bryan, Stone & Wade, of Ft. Worth, for appellant. H. A. Turner, of Ft. Worth, for appellees.

BUCK, J. On January 5, 1915, R. T. Stuart filed suit against Massey Wilson and J. W. Bryan, and on January 22, 1917, plaintiff filed amended petition in which the International Life Insurance Company of St. Louis, Mo., was also made defendant. Plaintiff alleged that in the matters, contracts, and agreements set forth in the pleading defendant Bryan acted for himself and as agent for his codefendants Massey Wilson and the International Life Insurance Company. He pleaded a contract or agreement in 1914, whereby plaintiff agreed to sell and defendant to purchase $50,000 of the capital stock, at $20 per share, of the American Home Life Insurance Company; that, in pursuance of said agreement, plaintiff delivered to defendants a large number of the shares of stock of the American Home Life Insurance Company, for which defendants paid him $20 per share, but that 275 shares of said stock so delivered to defendants were not paid for in full, but that he (plaintiff) only received $4,500, and that defendants still were due him thereon the sum of $1,000. He further alleged that, at the time of delivery of the 275 shares, the agent of plaintiff made a mistake in drawing the draft attached to the shares of stock, drawing said draft for the sum of $4,500 instead of $5,500; that defendants knew at the time of said mistake, and fraudulently concealed the same from the plaintiff, and that plaintiff did not discover the mistake of his agent until later; that when plaintiff discovered the mistake he called the attention of the defendants thereto, and they acknowledged the existence of said mistake, and promised to pay the balance due on the purchase price of said stock. Defendants, after a general demurrer and general denial and special exceptions, specially denied that there was any mistake made in the drawing of the draft in the sum of $4,500, and specially denied that in the contracts and agreements as to the purchase of the stock of the American Home Life Insurance Company the defendant Bryan acted for and was the agent of the defendants Wilson and the International Life Insurance Company. Defendant Bryan, individually, pleaded that he was under no contract or obligation to purchase any given number of shares in the American Home Life Insurance Company, but that on August 29, 1914, said plaintiff was claiming that said defendant was under obligation to purchase some American Home stock from the plaintiff, and that upon said date the plaintiff wrote the defendant to the effect that he was drawing a draft upon defendant Bryan for $4,500 with 275 shares of the American Home stock attached to the draft, and that if said draft was paid that this would relieve the defendant of any further obligations under this contract; that later said draft was paid and the transaction closed. Defendant Bryan denied specially that any mistake was made in the drawing of the draft. The cause was submitted to the court without the intervention of a jury, and judgment was rendered against the International Life Insurance Company in the sum of $1,139, with 6 per cent. interest from judgment. The court found that the defendants Bryan and Wilson, in the negotiations and agreements with plaintiff, were not acting for themselves, but as the agents and representatives of the defendant International Life Insurance Company, and rendered judgment for said defendants Bryan and Wilson. The defendant International Life Insurance Company has appealed.

The trial court filed his findings of fact and conclusions of law, which we will not attempt to set out in detail, but, briefly, such findings of fact are to the effect that:

(1) In the summer and fall of 1914 the International Life Insurance Company, hereafter called Insurance Company, a corporation of St. Louis, Mo., attempted to acquire sufficient stock in the American Home Life Insurance Company, a corporation of Ft. Worth, Tex., to enable the former, by vote at stockholders' meeting, to liquidate said last-named company and take over its assets; that in pursuance thereof, and as agent for said Insurance Company, said Bryan entered into a contract with Stuart, by which Stuart agreed to sell and Bryan agreed to buy $50,000, at $20 a share, of the American Home Life Insurance Company stock.

(2) That, prior to entering into said contract, plaintiff had discussed with defendant Massey Wilson, president of the Insurance Company, the matter of the proposed contract, and said Wilson represented to plaintiff that any contract made by him with Bryan would be carried out by the Insurance Company; that on July

20, 1914, a meeting of the stockholders of the American Home Life Insurance Company was held, for the purpose of deciding whether said company would liquidate through the said Insurance Company, and that prior thereto plaintiff, under his contract with Bryan, had delivered to the latter and to said Insurance Company about 1,000 shares of stock in the said American Home Life Insurance Company, some of which belonged to him (plaintiff) individually, and some to his friends, as was contemplated by the parties at the time they entered into the contract, and the defendants paid for same at the rate of $20 per share.

(3) That, on the date of said stockholders' meeting, plaintiff delivered to said Bryan, under the contract aforesaid, 125 shares of stock, which plaintiff had bought shortly prior thereto from one Allison, paying therefor $18 per share, but that said Bryan did not, at the time of said delivery by plaintiff, pay for said stock, but promised to do so immediately after the meeting. At this meeting the stockholders voted against the plan to liquidate the American Home Life Insurance Company through the said Insurance Company, and Bryan left Ft. Worth, and later returned the 125 shares of stock to plaintiff. The plaintiff refused to accept same, but insisted on said Bryan's carrying out the contract as originally made.

(4) That the said Insurance Company did not abandon its plan to secure sufficient stock to liquidate the American Home Life Insurance Company, and on December 23, 1914, had secured sufficient stock to do so, and made a proposition to the stockholders, which was accepted, by which said Insurance Company acquired all the assets and assumed all the liabilities of the American Home Life Insurance Company.

(5) That between July 20 and August 29, 1914, plaintiff purchased 150 shares of stock in said American Home Life Insurance Company, paying therefor $19, and defendant Bryan, acting on behalf of said Insurance Company, agreed to pay for same at $20 per share; that on August 29th said Bryan wrote said Bryan, advising him that he was drawing on him for $4,500, with 275 shares of the American Home stock attached, in which letter the following language was used: "When this draft is paid, this will relieve you of any further obligations under your contract with me. Otherwise I shall hold you to your contract, and will give you until September 4th to meet the draft, which will be one week from to-day."

(6) That in writing said letter said Stuart dictated the same to his secretary, leaving the number of shares and the amount of the draft blank, telling his secretary to look up the number of shares on hand, and to figure the same at $20 per share, and to fill out said blanks accordingly, and to draw on said Bryan for that amount; that, through an error of said secretary, the draft was made in the amount of $4,500, and that amount was expressed in the letter as being the selling price of the stock to which the draft was attached.

(7) That several letters and telegrams passed between Bryan and Stuart between the drawing of the draft and the payment thereof, and in these letters and telegrams the amount of the draft was mentioned, to wit, $4,500.

(8) That, before the payment of said draft, the plaintiff went to Arizona on business, and returned to his home in Dallas about December 20th, and that then, in checking up his accounts, he for the first time ascertained that a mistake of $1,000 was made in writing the letter of August 29, 1914, etc.; that immediately he phoned Mr. Bryan, who was then in Ft. Worth, and advised him that he had made a mistake, and Bryan admitted that he thought it was a mistake on the part of plaintiff, and then and there offered to return said stock to Stuart if the latter would return the $4,500; that Stuart refused to accept this proposition.

(9) On or about December 22d plaintiff met Bryan and J. L. Babler, one of the vice presidents of the said Insurance Company, in Ft. Worth, and there discussed the matters between them; that said Bryan again admitted the mistake, and told plaintiff that he would correct it as soon as the meeting for the purpose of liquidating the American Home Life Insurance Company had been held, which was to be the following day; that after some discussion, Stuart offered to return the $4,500, and requested that his 275 shares of stock be returned to him then and there; that said Bryan and Babler stated to Stuart that they were going to have their meeting on the following day, and immediately thereafter the settlement would be corrected and cured, and said Babler stated that he would see that it was corrected.

(10) That said Stuart, relying on the representations and agreements of Bryan and Babler, permitted them to keep the stock, with the understanding that after the meeting they would pay him therefor at the rate of $20 per share.

From the foregoing facts the court found that the said Insurance Company wanted to use said 275 shares of stock for the purpose of voting the same in the meeting to be held, and to prevent Stuart from using his influence against them in their efforts to effect the liquidation; that since said meeting the defendants have at all times refused to correct the mistake or pay the balance claimed by defendant.

[1] Appellant's first assignment is directed to the action of the court in overruling defendants' special exception to that portion of plaintiff's petition wherein the plaintiff undertook to allege mutual mistake. It is contended that the mere allegation of mutual mistake is the conclusion of the pleader, and that it is insufficient as a predicate for equitable relief, especially where the facts pleaded show that the mistake alleged was in fact not mutual, but unilateral, and on the part of the plaintiff alone. We are of the opinion that that portion of plaintiff's petition, to wit, paragraph 4, wherein he asserts that the $4,500 had been paid by defendant and received by plaintiff under a mutual mistake of fact of plaintiff and defendant, does not in fact show a mutual mistake, but that it does allege a unilateral mistake on the part of plaintiff, and an acknowledgment on the part of the defendant that plaintiff had made a mistake in drawing the draft for $4,500 instead of $5,500; and that the further allegation in the paragraph contained, to the effect that defendants knew of this mistake on the part of plaintiff, and that plaintiff hereafter called the attention of the defendants to this error, and defendants acknowledged that they knew of this mistake, and promised to pay the balance due on the purchase price of the stock aforesaid, presents a ground for equitable relief.

In 2 Pomeroy's Eq. Jur. § 856, it is said:

"There are two requisites essential to the exercise of the equitable jurisdiction in giving any relief, defensive or affirmative. The fact concerning which the mistake is made must be material to the transaction, affecting its substance, and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties. * * * As a second requisite, it has

sometimes been said, in very general terms, that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but, even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even clearly established negligence may not, of itself, be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby."

In Taylor v. Godfrey, 62 W. Va. 677, 59 S. E. 631. it is held that:

"Mistake, within the rule making it a head of equity jurisdiction, has been defined as 'some unintentional act, omission, or error, arising from unconsciousness, ignorance, forgetfulness, imposition, or misplaced confidence.' Where an instrument is drawn and executed, professing or intending to carry into execution an agreement previously entered into, but which, by mistake of draftsmen, either as to fact or as to law, does not accomplish that purpose or violates it, equity will relieve from such mistake. Mere neglect or omission to read or know the contents of a written instrument before execution is not necessarily a bar to reformation thereof, but relief is proper in such case if the instrument, through mistake, fails to accomplish the purpose intended. See vol. 3, Words and Phrases."

[2] A mistake which equity would relieve against must ordinarily be a mutual one. Abbott v. Building Ass'n, 86 Tex. 467, 25 S. W. 620. But it is not always necessary, in order that equity may be invoked, that the mistake shall be mutual. Where a fact is known to one, and not to the other, its suppression may constitute fraud. Plaintiff alleged in his petition that the defendants, knowing that a mistake had been made in the amount for which the draft was drawn, fraudulently concealed from plaintiff the fact, but afterwards, admitting the mistake, agreed to pay him the balance due.

[3] We think the pleadings sufficiently alleged a unilateral mistake, of a clerical nature, on the part of plaintiff's secretary, the acceptance of the shares of stock and the payment of the draft in the smaller amount on the part of defendant with the knowledge that a mistake had been made, and a subsequent promise on defendants' part to pay the balance due on the original contract price, and that in this respect the allegations present a cause of action. Hence the allegation of mutual mistake becomes immaterial, and the court did not commit reversible error in overruling defendants' exception.

[4] In the appellant's second assignment an attack is made on the contract, as supported by the evidence, on the ground that the evidence shows that if Bryan, acting for appellant, had contracted to purchase from Stuart the $50,000 worth of stock, at $20 per share, there was no corresponding obligation on the part of plaintiff to deliver to defendants said amount of stock at said price; that, therefore, the contract is lacking in mutuality. In Rose v. R. R. Co., 31 Tex. 49, 59, 60, a quotation is given from Parsons on Contracts, vol. 1, p. 375, which is pertinent to and answers the question here presented, and to which reference is here made. See, also, R. R. Co. v. Coyle, 123 Ky. 854, 97 S. W. 772, 99 S. W. 237, 8 L. R. A. (N. S.) 433, 124 Am. St. Rep. 384; Gile v. Motor Car Co., 27 N. D. 108, 145 N. W. 732, L. R. A. 1915B, 109. If Bryan, acting for appellant, promised to purchase $50,000 worth of the American Home Life Insurance Company stock from Stuart, and Stuart furnished such amount in compliance with the agreement, appellant would not be relieved of the force of the agreement to pay the agreed price for the stock on the ground that Stuart did not, at the time of the making of said offer, bind himself to furnish said amount of stock. As is said in a quotation in Anderson v. First Natl. Bank, 191 S. W. 936, 940:

"Accordingly, where one makes a promise conditioned upon the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality, and the promisor is liable, though the promisee did not, at the time of the promise, engage to do the act; for, upon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration, which relates back and renders the promise obligatory."

See, also, Roberts v. Anthony, 185 S. W. 426.

[5] The fact that at the time of making the contract for future delivery the party binding himself to sell has not the goods in his possession, and has no means of obtaining them for delivery otherwise than by purchasing them after the contract is made, does not invalidate the contract. Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1196; Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225; Merriam & Millard Co. v. Cole, 198 S. W. 1054, by this court, not yet officially reported; Burleson v. Burleson, 11 Tex. 7. Therefore we overrule appellant's first and second assignments.

[6] As preliminary to the discussion of further assignments in appellant's brief, attacking the findings of fact filed by the trial court, we think it proper to say that this is one of those cases wherein the evidence is so conflicting upon the material issues that the appellate court would be bound by the findings of fact by the trial court or the verdict of the jury upon such issues of fact, and in this respect the reviewing court would be required to sustain the verdict and judgment rendered for either party. And while, in the instant case, there is sufficient evidence in the record upon the material issues involved which would justify the sustaining by us of a judgment for the appellant, yet we think by giving the strongest probative effect to the evidence in favor of the judgment rendered, as it is our duty to do, such judgment cannot be disturbed for failure of necessary proof.

Under the third specifications of error, appellant urged that the court erred in his findings of fact, wherein he found that an unconditional contract of purchase was entered into by and between this defendant, acting through its agent, and R. T. Stuart, by the terms of which defendant absolutely contracted and agreed to purchase from said Stuart $50,000 worth of the capital stock of the American Home Life Insurance Company at $20 per share. Appellant insists that, under the undisputed evidence in this case, the trial court should have found that said contract was merely with reference to the stock owned by said Stuart at said time and by his friends at that time, and not with reference to stock subsequently purchased by Stuart from others than his friends. Stuart testified as follows:

"Mr. Bryan proposed that if I would agree to give him a letter saying that I had sold the stock to him that I owned in the company, that I could fix my own price on my own stock, provided it was within the bounds of reason. He wanted a letter from me stating that I had transferred my stock to the International, in exchange for their stock, with the understanding that, after they got charge of the company, that they would then pay me the money for my International stock. I told Mr. Bryan that I would not even entertain a proposition like that, and that the only proposition I would entertain would be that he should give me and my friends twenty dollars a share for our stock, and that I would want him to make a contract with me to take at least fifty thousand dollars' worth of stock at twenty dollars a share; and he said he would not consider that proposition at all; that he would not agree to pay twenty dollars a share; that the International could not afford to pay that much, because he figured at that time that the liquidating value was about eighteen dollars or nineteen dollars a share, and that they would consider it. I says, 'All right, Mr. Bryan, if you won't consider that, there is no use for us to talk any further.' I left him, and three days later he came back to my office in Dallas and said he had been thinking about the matter, and that he had seen Mr. Wilson, and that they had decided to pay me twenty dollars a share for fifty thousand dollars worth of stock."

We think the evidence quoted is sufficient to sustain the finding of the court in the respect of which complaint is made. Hence we overrule the third assignment, and the fourth, which attacks the conclusion of law by the trial court to the effect that the plaintiff was entitled to recover of the defendants the sum of $1,000. This contention is based on the asserted fact that the evidence shows that by the letter of August 29, 1914, Stuart proposed to accept $4,500 in payment of the 275 shares of stock, and that, if any mistake was made by Stuart in drawing such draft, Bryan had no knowledge or notice that such mistake had been made, and that the payment of such draft by Bryan was a settlement in full of all contracts theretofore made ·between the parties. As to this feature, Stuart testified in part as follows:

"It is my testimony that Mr. Bryan admitted to me that he knew the draft of $4,500 was a mistake. He made that admission to me on the day of the meeting; on December 20th. He said at that time it was a mistake, and that he would correct it as soon as the meeting was over; but after the meeting was over, and they had gotten what they wanted, he left."

We think the above ' quotation from the record is sufficient answer to the fourth assignment, and what we have heretofore said sufficiently disposes of the question presented in the fifth assignment, which is likewise overruled.

Under the sixth assignment, appellant refers to the fact that plaintiff's letter of August 29, 1914, to Bryan, was dictated and signed by plaintiff, and that in said letter he offered to compromise all claims held by him against Bryan on his alleged contract, provided said Bryan would pay the draft for $4,500, and accept the certificates representing the 275 shares of stock. Appellant urges that, taking into consideration the fact that several letters and telegrams passed between Bryan and plaintiff, in several of which communications the number of shares of stock involved in the deal and the amount of the draft drawn were mentioned, "it is unconceivable to believe the testimony of R. T. Stuart to the effect that an error was made in that way in the face of the letters which passed between them, and therefore the court should not have found that such a mistake had been made." It is true the facts mentioned by appellant would have amply sustained a conclusion contrary to that reached by the trial court. But the trial court heard the testimony, and we cannot say, as a matter of law, that the conclusion reached by him is not supported by the evidence.

We do not think any error is presented in appellant's seventh assignment, wherein it contends that in no event could plaintiff below recover more than the reasonable market value of the 275 shares of stock, which it is insisted the evidence shows to have been $18 or $19 per share. The cause of action was predicated on an alleged express contract on the part of defendant to accept and pay for the stock at $20 per share. If a mistake was in fact made by Stuart or his secretary in drawing the draft, and if Bryan knew that such a mistake had been made, and subsequently promised to pay for the stock purchased, such promise would reasonably be construed to mean that he would pay the contract price for said stock.

Attack is made, under the eighth assignment, on the findings of fact by the trial court to the effect that in writing said letter of August 29, 1914, Stuart dictated the same to his secretary, leaving the amount of shares and the amount blank, telling his secretary to look up the number of shares on hand and to figure the same at $20 per share, and to fill out said blank accordingly, and to draw on said J. W. Bryan for the amount. It is insisted that the undisputed evidence shows that Stuart knew the said number of shares he was promising to sell to said Bryan at the time of dictating said letter, and at said

time, according to his evidence, dictated the number of shares to the stenographer, and only the amount was left blank, and not the number of shares which he was selling. Even if the state of evidence be as claimed by appellant, and the court was not justified in finding that both the number of shares and the amount of the draft were left blank, yet such mistake, if any, becomes immaterial, since the judgment rests on the theory that the mistake was made as to the amount of the draft.

[7] It is urged in the ninth assignment that it is evident that Stuart was guilty of gross negligence in making the mistake claimed by him as to the amount for which the claim was to be drawn. We do not think, under the circumstances, it is a question of negligence. Even though plaintiff was negligent in the respect mentioned, if Bryan knew that a mistake had been made, at the time he accepted the stock and paid the draft, he could not avoid the effect of the mistake, by reason of said negligence on the part of plaintiff, especially in view of said Bryan's agreement and promise thereafter to right the mistake.

We think what has been said heretofore has sufficiently disposed of the questions raised, and the remaining assignments, to wit, the tenth and eleventh, and therefore all assignments are overruled and the judgment is affirmed. Affirmed.

CONNER, C. J., not sitting. Serving on Writ of Error Committee at Austin.