## LEVINE v. FINKELSTEIN et al.
## No. 10060.

Court of Civil Appeals of Texas. Galveston.
Jan. 11, 1935.

Rehearing Granted Feb. 14, 1935.

Ingram & Ingram, of Wharton, and Eli Goldstein, of San Antonio, for appellant.

Cline & Cline, of Wharton, for appellees.

LANE, Justice.

On the 15th day of March, 1929, Wm. Finkelstein, acting for himself and as agent for Mose Finkelstein, Abe Finkelstein, and Etta Finkelstein, styled in the contract hereinafter mentioned as "party of the first part," entered into a written contract with Aaron Levine, party of the second part. Those parts of the contract pertinent to the controversies raised by the suit hereinafter mentioned are to the effect that the party of the first part agreed to let and lease to second party a certain store building on Mechanic street in the city of El Campo, Wharton county, Tex., same being the store building in the block known as the Finkelstein block, which had prior to said contract been leased by the City Meat Market. The contract was dated the 15th day of March, 1929, and was to run until March 20, 1934, a term of five years. The contract provides that said building was to be used as a grocery store only, and that it should not be sublet without the consent of the first party.

By the terms of the contract Levine, the second party, in consideration for the lease, agreed to pay to the first party as rental for the building the sum of $50 per month for the first year of the lease and the sum of $55 per month for the remaining time of the lease, payment to be made monthly.

The concluding paragraphs 4 and 5 of the contract are as follows:

"4. It is understood and agreed that party of the second part shall have the right to make such changes in said building as he may deem necessary for the consideration of his business but at the time of the expiration of this lease he shall have the right to move any shelving, counters, etc., that may be placed therein by him but shall put said building back in the same condition as it was when occupied, ordinary wear and tear excepted.

"5. Party of the first part agrees to furnish to party of the second part a space of 18x20 feet in the warehouse located immediately behind the building herein rented. This warehouse space to be at no expense to party of the second part. This lease made subject to sale of said property."

This suit was brought by Wm. Finkelstein, Mose Finkelstein, and Fannie Finkelstein, for herself as widow and executrix of the estate of Abe Finkelstein, deceased, and for cause of action they first alleged the execution of the contract above mentioned, and then alleged as follows:

"3. That at the time defendant went into possession of said building the front of said store was in the form of a show window, with inset door, that is, the door was set back from the line on the street and contained plate glass show window in front and vestibule, and after taking charge thereof defendant removed the vestibule and show case and has refused to replace the same in accordance with said lease in the same condition as when received by him, to his damage in the sum of $300.00.

"4. That plaintiffs Mose Finkelstein and Fannie Finkelstein, Extrx., are the owners of an undivided ⅓ interest in said building and as such entitled to ⅓ each of the recovery in this suit, they having accepted the contract made by Wm. Finkelstein and the benefits therefrom.

"5. That defendant has breached said contract, and has failed and refused to pay the rentals provided therein from the payment due March 20, 1931, to this date and thence to end of lease term tho often demanded by plaintiffs, but has removed his business from the store building and notified plaintiffs that he does not intend to carry out

his said contract as to said building, all to the damage of plaintiffs in the sum of $770.00 rents to May 20, 1932, and $300.00 damages to said building, and in the total sum of $1,070.00 damages, with interest thereon from maturity of each payment until paid at the rate of 6% per annum. And said building will be unoccupied until October 1, 1934, to plaintiffs' further damage in the further sum of $275.00 for which plaintiffs sue."

Their prayer was for judgment for their debt, damages, and costs of suit.

After the suit was filed, the plaintiff Etta Finkelstein died intestate, leaving plaintiffs Wm. Finkelstein and Mose Finkelstein as her only heirs at law.

Defendant answered by general demurrer, general denial, and specially substantially alleged that on or about the 31st day of May, 1930, Wm. Finkelstein, who acted as agent for the other plaintiffs in the renting of the premises in question, verbally notified defendant that he had an opportunity to lease another store in part of the Finkelstein block, which had been used by the Chevrolet Company as a garage, to the A. & P. Stores as a grocery store, and proposed to defendant that he (defendant) rent it for a rental of $100 per month, that Finkelstein refused to release defendant from his said rental contract of date March 15, 1929, and that, in order to protect himself against the installation of another grocery business in the building formerly used by the Chevrolet Company, which adjoined the building leased by him, he entered into a second contract, by the terms of which he leased said Chevrolet building on the terms submitted by Finkelstein, upon the oral understanding and agreement that Finkelstein would agree to make a change or modification of the original contract of date March 15, 1929, to the effect that Finkelstein would not rent any part of the Finkelstein block to any person who would install therein a grocery store in competition with the grocery store owned and operated by defendant.

All the plaintiffs, by supplemental answer, denied that any such oral agreement or understanding as alleged by defendant was made or had, and denied generally the allegations in the answer of defendants.

Plaintiffs Mose and Fannie Finkelstein, by their supplemental petition, alleged that Wm. Finkelstein had no authority, if he did so contract, to contract for and bind them by any oral agreement to lease their property, or any part thereof. They say that,

as shown by the second written contract entered into between the parties, they acted for themselves in making and signing said contract after all the terms, conditions, and considerations thereof had been inserted therein, same being submitted to them for execution before they signed it as a complete contract, and that defendant, Levine, signed and accepted the same as such. Wherefore they say that they are in no wise bound by any oral agreement, if made by Wm. Finkelstein; that they had no notice or knowledge that any such agreement was made, if such was made. They denied that Wm. Finkelstein was their agent.

Defendant filed a cross-action alleging that he suffered certain damages by reason of certain acts of the plaintiffs, but no request for a finding on the issue raised, if any, with reference to such alleged damages was made, and no charge relating thereto was given, and, as the court rendered judgment denying any recovery on such cross-action, and as no complaint of such judgment is here made, we deem it unnecessary to state the pleading upon which defendant claimed damages.

The case was tried before a jury, to which the court submitted but two inquiries, to wit:

First. "Do you find from a preponderance of the evidence that as a consideration for the execution of the lease contract of May 31, 1930, of the store room known as the Chevrolet building, by the defendant that the plaintiff, Wm. Finkelstein, agreed with the defendant that he would not lease any store room in the Finkelstein block for the purpose of being used as a grocery store?

"You will answer 'yes' or 'no' as you find the fact to be from the evidence."

Second. "What amount do you find from a preponderance of the evidence it would cost to replace the front of the store building known as the City Meat Market in the same condition it was in when the lease contract was signed?

"You will answer by stating the amount, as you find the facts to be from the evidence."

Plaintiffs excepted to the submission of special issue No. 1 for the following reasons:

"1. Because the said contract was a contract in writing purporting on its face to be a complete instrument and oral evidence of the alleged addition thereto was inadmissible for any purpose to vary the terms of the

written contract in the absence of an allegation of fraud, accident or mistake.

"2. Because the said written contract was a lease for more than one year and required by law to be in writing and any amendment or addition thereto is also required to be in writing and therefore the said alleged verbal agreement varying the terms of said written contract is in contravention of the statutes of frauds and void."

We presume the court overruled the exceptions made by the plaintiffs to special issue No. 1, as that issue was submitted to the jury and answered in the affirmative.

The answer of the jury to special issue No. 2 was $175.

Upon the verdict of the jury and the evidence, the court rendered judgment for the plaintiffs, wherein it is recited:

"And now, on this 15th day of June, 1933, the court being of the opinion from the pleadings, the evidence and answers of the jury to the special issues, that defendant ought to have and take nothing on his cross-action filed in this cause, and that plaintiffs ought to recover their damages in the sum of $175.00 to the building so leased to defendant by plaintiffs under the contract sued on, and the further sum of $1008.30 rents thereon to Oct. 1, 1932, and the further sum of $81.27 interest on past due rents to this date, together with interest on the said sum of $175.00 damages and the said sum of $1,008.30 rents at the rate of 6% per annum from this date until paid, and all costs of suit, for which let execution issue;

"It is therefore ordered, adjudged and decreed by the court that the defendant take nothing by his cross-action filed herein and that plaintiffs Wm. Finkelstein, Mose Finkelstein and Fannie Finkelstein, Executrix of the Estate of Abe Finkelstein, deceased, individually and as sole heirs of Etta Finkelstein, deceased, do have and recover of and from the defendant Aaron Levine the sum of Eleven Hundred Eighty Three and 30/100 ($1183.30) Dollars, together with interest thereon from date at 6% thereof until paid; and the further sum of $81.27 accrued interest on $1,008.30 thereof from maturity of the respective installments to this date, and all costs of suit, for which let execution issue."

Aaron Levine has appealed from the judgment.

Appellant by his first assignment and proposition thereunder substantially insists that the court erred in refusing to grant his motion for judgment upon the finding of the jury to special issue No. 1, because the jury, in answer to special issue No. 1, found that as a consideration for the execution of the written lease contract, the second lease, of date May 31, 1930, by the terms of which appellant leased from appellees the storeroom known as the Chevrolet building, Wm. Finkelstein had agreed orally with appellant that, if appellant would lease the Chevrolet building, he (Finkelstein) would not lease any store room in the Finkelstein block for the purpose of being used as a grocery store; that, while the contract in question as written and executed by all parties thereto is one required by the statutes of fraud to be in writing, still it was by the subsequent oral agreement by Wm. Finkelstein with appellant modified, since appellant, relying thereon, has performed his undertaking thereunder.

Appellant is not entitled to a reversal of the judgment upon the grounds urged by the assignment and proposition. The contract in question is in writing, its terms are clear and in no wise ambiguous. It is a contract agreed to and signed individually by each of the appellees and appellant. There is in the contract no intimation that lessors, or any one of them, had agreed in any manner with lessee, Levine, not to lease any storeroom in the Finkelstein block for the purpose of being used as a grocery store. There was no evidence tending to show that either of the lessors, by any agent or otherwise, subsequent to the execution of the contract, made the agreement attributed to Wm. Finkelstein, but, to the contrary, it appears from all the evidence, the pleadings of the defendant, Levine, and the controversy during the trial of the case, that, if any such oral agreement as alleged by appellant was made, it was made in the negotiations between the parties leading up to the making of the contract, and therefore, since it was not a part of the written contract thereafter executed, it cannot be considered as a modification thereof, and, in the absence of any pleading of fraud, accident, or mistake, as in this case, such alleged oral agreement furnishes no grounds of a defense to appellees' suit against appellant.

Appellant, Levine, testified: "We were in this small store, eighteen feet wide, which was awful small for a grocery store, and I was over to El Campo, and heard that he was trying to rent the building to the AP store, and I went and talked to Mr. Finkelstein about renting this larger building from him, and we agreed to rent this larger build-

ing; and in drawing up the second contract, he told me that if I would keep the two buildings, there wouldn't be any other grocery store go in that block."

At this point counsel for appellees interposed the following objection to the testimony of Levine: "Those are negotiations leading up to a contract, and they are merged in the written instrument, and in the absence of any pleading of fraud, accident or mistake, the defendant has no right to offer any such testimony as to the negotiations leading up to the execution of the written instrument itself, because the written instrument is a contract, and the previous negotiations are presumed and are as a matter of law embodied in that written instrument."

In reply to such objection, counsel for appellant said: "If the Court please, we have alleged in our pleadings that the consideration, one of the considerations for the execution of the second agreement for the Chevrolet building was the consideration that no part of the block would be rented by the owner for a grocery store, and the witness has just testified to that fact."

It is thus made apparent that, if any such agreement as alleged by appellant in his answer was made, it was made prior to the execution of the contract in question and not subsequent thereto.

The rule that parol testimony is inadmissible to vary the terms of written unambiguous contracts, in the absence of allegations of fraud, accident, or mistake, is too well settled to require the citation of authorities in its support.

Another rule is well established; that is, that all prior contemporaneous negotiations, agreements, and promises are merged in the written contract. Such presumption may, however, be rebutted only by pleading and a showing that such negotiations, agreements, and promises were omitted from the written contract by reason of fraud, accident, or mistake. Ford Motor Co. v. Maddox Motor Co. (Tex. Civ. App.) 3 S.W.(2d) 911, on motion for rehearing; Fleming v. Todd (Tex. Civ. App.) 42 S.W.(2d) 123, and authorities therein cited.

In the present case no fraud, accident, or mistake was alleged, nor was any attempt made to prove the existence of either fraud, accident, or mistake in omitting the alleged oral agreement from the written contract, if, indeed, such agreement was in fact made.

Further reason for overruling appellant's assignment and proposition is that the contract in question, by its terms, is a lease of real estate for a term of five years, and it would make no difference whether the alleged oral agreement, if made, was made prior or subsequent to the execution of the contract in question. By article 3995, Vernon's Ann. Civ. St., it is provided that no action shall be brought upon any contract for the sale or lease of real estate for a longer term than one year, unless it be in writing. See 20 Texas Jurisprudence, § 52, p. 261.

Under section 70, vol. 20, Texas Jurisprudence, it is said: "The effect of the provision, (of the statutes of fraud) as expounded by the court, is to render unavailing to the parties, as the ground of a claim, any parol contract, in whatever shape it may be put, by which either party is to part with real estate."

Under section 74 of the same volume, page 284, it is said: "Suit is not maintainable upon a contract which is partly in writing and partly in parol. The language of the statute is said to exclude the idea that a contract which is partly written and partly oral is sufficient to meet its requirements. Accordingly, the statute is applicable where the plaintiff seeks to establish a cause of action by proof of an oral contract the subject matter of which is found in a preceding agreement in writing. 'To enforce such contract would practically annul the statute of frauds.'"

Many and recent authorities are cited in support of the statement.

In Beard v. A. A. Gooch & Son, 62 Tex. Civ. App. 69, 130 S. W. 1022, 1023, the Court of Civil Appeals, referring to certain paragraphs of the trial court's charge, said: "We hold that these paragraphs of the charge constitute fundamental error. There being no ambiguity in the written contract, and it being one which the statute of frauds required to be in writing, parol evidence was not admissible for the purpose of changing or modifying any of its terms. * * * Proof of such parol agreement constituted a material change in the written contract, and, the latter being a contract for the lease of real estate for a term of more than one year, it was required by the statute of frauds to be in writing; and we therefore hold that any subsequent contract or agreement changing any of its terms must also be in writing. Burgett v. Loeb, 43 Ind. App. 657,

88 N. E. 346; Bradley v. Harter, 156 Ind. 499, 60 N. E. 139; Woodberry v. Duvall, 15 Ind. 160."

For authorities supporting the rule stated in the above quotation, see Sanborn v. Murphy, 86 Tex. 467, 25 S. W. 610; Gardner v. Sittig (Tex. Civ. App.) 188 S. W. 731; same case by the Commission of Appeals, 222 S. W. 1090, wherein the court said: "The determinative question in the case is whether the agreement for the surrender of the lease, the term remaining and to be surrendered being for more than one year, was within the statute of frauds. Upon consideration of this question, we concur in the conclusion of the Court of Civil Appeals that the agreement was within the statute. That court in its opinion so fully and clearly discusses the question that we deem further discussion unnecessary."

What we have above said renders it unnecessary to discuss the remaining assignments of appellant, and they are each overruled without a discussion of them in detail.

For the reasons pointed out, the judgment is in all things affirmed.

Affirmed.

### On Motion for Rehearing.

At a former day of this term of this court we affirmed the judgment of the trial court, as shown by our opinion now on file in this court.

On motion for rehearing Mr. Eli Goldstein, who has, since our opinion was filed, become engaged as counsel for appellant, insists that this court erred in affirming the judgment of the trial court, for the reason that there is fundamental error apparent of record, which had not before the affirmance of the judgment by this court been suggested to the court.

The fundamental error complained of is substantially stated as follows:

The suit was originally instituted on June 19, 1931, by William Finkelstein, Mose Finkelstein, Fannie Finkelstein, and Etta Finkelstein, against appellant, Aaron Levine. Thereafter, on December 3, 1931, Etta Finkelstein died. The plaintiffs went to trial on their first amended original petition, their first and second supplemental petitions, and their trial amendment. The fact of the death of Etta Finkelstein was brought to the attention of the court in plaintiffs' first amended petition by the following allegations:

"That since the filing of the original petition herein the plaintiff Etta Finkelstein died intestate leaving the plaintiffs William Finkelstein and Mose Finkelstein as her only heirs at law."

"There was no other allegation made by appellees pertaining to the death of Etta Finkelstein, to the condition of her estate, or to any action taken therewith or the lack of necessity for same, and no evidence at all was offered by appellees concerning any of these matters. Specifically, there was neither allegation nor proof that no administration was pending in the estate of Etta Finkelstein, deceased, and that there was no necessity for same. Yet appellees were suing not only individually but as heirs of Etta Finkelstein and a period of four years, the time in which administration of the estate could be had, had not expired."

Appellant in due order filed his general demurrer to appellees' petition, which demurrer was by the court overruled.

Judgment was rendered against appellant for $1,185.30 in favor of Fannie Finkelstein, individually, and in favor of William Finkelstein, and Mose Finkelstein, personally and as sole heirs of Etta Finkelstein, deceased.

We find that the foregoing statement relative to the proceedings in the trial court is supported by the record. The error, therefore, is apparent of record and fundamental.

The contention presented in the motion is supported by the following authorities: Richardson v. Vaughan, 86 Tex. 93, 23 S. W. 640; Laas v. Seidel, 95 Tex. 442, 67 S. W. 1015; Johnson v. Bank (Tex. Civ. App.) 242 S. W. 293; Provident Life & Accident Ins. Co. v. Johnson (Tex. Civ. App.) 235 S. W. 650; Youngs v. Youngs (Tex. Com. App.) 26 S.W.(2d) 191.

The motion for rehearing is granted, and the former judgment of this court affirming the judgment of the trial court is set aside, and such judgment of the trial court is reversed and the cause is remanded.

Motion is granted.