## FEDERAL UNDERWRITERS EXCHANGE v. CUPIT et al.

### No. 4102.

Court of Civil Appeals of Texas. Beaumont.

April 29, 1943.

Rehearing Denied May 19, 1943.

C. A. Lord, of Beaumont, for appellant.

Collins, Williams & Garrison, of Lufkin, for appellees.

WALKER, Chief Justice.

This suit was instituted in district court of San Augustine County by appellees, the surviving widow of L. C. Cupit, and their minor children, as an appeal from an adverse award of the Industrial Accident Board. The theory of their petition was that L. C. Cupit as an employee of Greer, Downs & Knoll Lumber Company, a partnership, hereinafter referred to as the Lumber Company, was killed in the course of his employment, and that his employer was a subscriber under our Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., and that appellant, Federal Underwriters Exchange, was their compensation insurance carrier. Appellees also alleged that if L. C. Cupit, at the time of his death, was not an employee of the Lumber Company, appellant was estopped to deny the relationship of employer and employee. Appellees' petition is subject to the construction that appellant, by a common-law contract, issued its indemnity insurance policy covering L. C. Cupit, as the employee of Nicholls, on the conditions of our Workmen's Compensation Act. Appellant's answer was sufficient to support all its points of error. The case was submitted to the jury on the issues of the Workmen's Compensation Act, all of which were found in appellees' favor. The jury also found in appellees' favor the issue of estoppel plead by them. Judgment was entered on the jury's verdict for compensation for a period of 360 weeks, at the rate of $10.38 per week, to be paid in a lump sum, from which appellant has regularly prosecuted its appeal.

■ At the time of his death, L. C. Cupit was an employee of W. W. Nicholls, who had a logging contract with the Lumber Company, and was assisting Nicholls in his logging operations. Nicholls' compensation was $7.50 per thousand for cutting the timber, hauling it from the woods, and delivering it to the Lumber Company on their skidway at their saw mill. He furnished his own truck and paid for its upkeep. From the compensation paid him by the Lumber Company he paid all the hands who assisted him in his logging operations, including L. C. Cupit. The Lumber Company exercised no authority over him as to the manner in which he did

his work or as to his employees—the wages paid them by him and the authority exercised by him over them. If the Lumber Company exercised any authority whatever over Nicholls such authority did not exceed that which was necessary to secure the performance of the logging contract according to its terms in order to accomplish the results contemplated by Nicholls and the Lumber Company in making their contract. On this statement W. W. Nicholls was an independent contractor under the Lumber Company, Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905, and at the time of his death L. C. Cupit was Nicholls' employee and not an employee of the Lumber Company, and was killed in the course of his employment with Nicholls. The details of the death of L. C. Cupit are immaterial on any issue presented by this appeal since on the undisputed facts he was killed in the course of his employment with W. W. Nicholls. Appellees strongly contend that Nicholls was not an independent contractor, but every contention advanced by them on this theory of their case is ruled against them by the opinion of the Supreme Court in the case cited supra.

Appellees' second counterpoint is that if Nicholls was not a general employee of the Lumber Company, and that if Cupit working for Nicholls was not a general employee of the Lumber Company, and as such covered by the provisions of the workmen's compensation policy issued by appellant to the Lumber Company, then appellant was estopped on the undisputed facts to deny the relation of employer and employee between it and Nicholls and L. C. Cupit. The facts on this issue are as follows: The policy originally issued by appellant to the Lumber Company expressly included "logging or lumbering—including transportation of logs to mill, construction, operation, maintenance or extension of logging roads or logging railroads; drivers, chauffeurs and their helpers." Mr. Knoll, a member of the Lumber Company partnership, testified that the partnership bought the policy from appellant through a Mr. Butler; that Mr. Butler called on Mr. Knoll at San Augustine: that he talked to Mr. Butler about September, 1941, and explained to him about various phases of their work which he desired covered, and that appellant, through Mr. Butler, agreed to furnish such coverage. Mr. Knoll testified that he made it clear to Mr. Butler that he wanted their logging operations covered "whether the same might be carried on persons occupying the position of independent contractors or otherwise"; that appellant's agent told him that they would furnish that protection in this policy. Mr. Knoll did not give appellant the names of the persons who were hauling logs, or the names of the employees to be covered by this special agreement, but he explained to appellant's agent at the time just how the logging operations were carried on. He told them "just exactly the way they were carried on. We paid our log haulers just so much per thousand for hauling in our logs, out of that the log haulers paid the men who cut the logs in the woods and the men who bunched the logs, and the men who loaded the trucks, and the men who unloaded the logs at the mill; I told Mr. Butler that we wanted protection for those men. Mr. Butler instructed us to turn in the pay rolls of those loggers and their assistants. We did not turn them in as employees of this company; we turned in their pay rolls. The pay roll report which we turned into the insurance company did not contain the names of the employees, just the total sum of labor under each classification and the premium calculated by taking the premium rate on the various classifications. The insurance company figures that out. Each separate report was a pay roll report upon which the premiums were based for those two months, and the Lumber Company paid the Federal Underwriters Exchange premiums on those various operations based upon that report. All those men hauled logs from the adjoining counties, or this county, to our mill. The auditor of Federal Underwriters Exchange came to our office and checked up on our records, including the pay roll reports and the book kept by us of the pay roll by the week of the amounts paid by loggers to their employees. The Federal Underwriters Exchange has not refunded any of the premiums paid by us, based on these amounts, nor has it advised us that we had paid them any more than they were entitled to under the policy, nor has it indicated that it was going to make any refund. Our company has not expected any refund on account of the money paid to Federal Underwriters Exchange as premiums on the wages of the loggers. It was our understanding that the men working for Mr. Nicholls and the other logging men were to be covered beginning October 1, 1941. Therefore our company included

these amounts in the pay roll reports and paid the premiums to the company based on them." Mr. Knoll testified further: "I never could find out what the term 'independent contractor' was or is; that was why I was worried about that. And in order to be protected and have protection for those employees working under those loggers, about October 1st I called Mr. Butler, who was with the insurance company, and when he came over I talked to him about it. I told him the kind of coverage we wanted. Made it known that we wanted those men covered, and he said all that was necessary was to include their wages on our pay roll reports."

W. W. Nicholls testified that prior to November 15, 1941, prior to the death of L. C. Cupit, he had a conversation with Mr. Knoll with reference to insurance and that Mr. Knoll said that they had taken out insurance covering all the hands, and that they would pay that as long as they could and if it was too much, "they would call on us to pay a part. I was to give Mr. Knoll a list of the men working for me and the amount I paid them, I included in those amounts the wages I paid Mr. L. C. Cupit."

Mr. Lewis Lacy testified that he resided at Dallas and was secretary and treasurer of Federal Underwriters Exchange, and that T. J. Butler was the district manager at Houston, and that Mr. Butler was the agent who procured the business from the Lumber Company; that his office figured the premium based on the pay roll report, and that the Lumber Company was properly billed for and paid the premium; that he knew how and in what manner the logging operations of the Lumber Company were carried on at the time he received the reports and calculated the premiums and collected the premiums; that Mr. Butler advised him that the Lumber Company desired coverage for the men engaged in the logging operations; that he told Mr. Butler "if they would complete their records properly, and report all pay rolls involved in the logging operations, we would cover them."

C. A. Mohrle testified that he was president of Federal Underwriters Exchange, and that Mr. Lewis Lacy was secretary of the corporation and had general supervision of the underwriting department, and that Mr. Lacy had authority to act for Federal Underwriters Exchange, giving the instructions to Mr. Butler in connection with handling the matter with the Lumber Company, to have coverage on the men engaged in carrying on the logging operations. All conditions of the insurance coverage were agreed upon by the Lumber Company, appellant, W. W. Nicholls and L. C. Cupit, and the insurance contract was fully consummated and the premiums paid thereon prior to Cupit's death on the 15th day of November, 1941.

We pretermit a discussion of appellees' counterpoint that appellant was estopped to deny the relation of employer and employee between the Lumber Company and L. C. Cupit, as not material to the disposition of the case. However on this point in Southern Underwriters v. Jones, Tex.Civ.App., 125 S.W.2d 393, this court on a similar statement of facts sustained the proposition of estoppel, and in that case the Supreme Court dismissed the petition for writ of error on the theory that the judgment was correct. Clearly in that case our judgment was correct on a theory not involving the issue of estoppel. As against their counterpoint of estoppel, appellees are faced with the following proposition from the opinion of the Commission of Appeals, approved by the Supreme Court, in Southern Surety Co. v. Inabnit, 119 Tex. 67, 24 S.W.2d 375, 377: "As Inabnit was not such employee, the Industrial Accident Board had no jurisdiction to enter any award requiring the payment of compensation. Its jurisdiction could not be conferred by any agreement of the parties or by an estoppel based thereon." In Eudaley v. Ocean Accident & Guarantee Co., 77 F.2d 785, 786, Judge Sibley writing for the Circuit Court of Appeals at New Orleans, said: "An estoppel to deny that the deceased was insured is sought to be builded on the fact that his wages were reported to the appellee insurer and included in the basis for fixing the premium charge, and there has been no return of the resulting increase in premium since the insurer had knowledge of the facts. It is held that such considerations cannot impose liability to pay compensation under the statute in a case not covered by it. Southern Surety Co. v. Inabnit, 119 Tex. 67, 24 S.W.2d 375; Hill v. Georgia Casualty Co., Tex. Com.App., 45 S.W.2d 566."

We sustain appellees' counterpoint that if Cupit was not an employee of the Lumber Company, and if they could not invoke against appellant the issue of estoppel, yet appellant made a contract with the Lumber Company to insure Cupit

against accidental injuries and death, which contract was evidenced by the policy issued by appellant to the Lumber Company, and that this contract was construed by all parties as being for Cupit's benefit, and by express agreement of the parties the policy covered Cupit. The facts force the conclusion that if Cupit was not an employee of appellant, then appellant made a common-law contract for Cupit's benefit, a tripartite agreement, a third party contract for Cupit's benefit. Appellant agreed to insure him on the conditions and under the terms of our Workmen's Compensation Act. The Lumber Company, for Cupit's benefit, paid the premium on this policy and Cupit accepted the conditions of this contract thus made for his benefit. Certainly there is no proposition of law denying appellant the right to issue such a policy and to collect the premiums thereon. That appellant had the right to issue the policy on the conditions of our Workmen's Compensation Act is expressly affirmed by our Supreme Court in McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S. W.2d 679. The fact that the policy in the McCaleb case was made a common-law contract by virtue of a written endorsement attached thereto does not distinguish it from the case at bar wherein the contract rested in parol, since it is the settled law of this state that parol contracts of insurance are valid. Connecticut Fire Insurance Co. v. Fields, Tex.Civ.App., 236 S.W. 790; Great Southern Life Ins. Co. v. Dolan, Tex.Civ.App., 239 S.W. 236; Brotherhood, etc., v. Cook, Tex.Civ.App., 221 S.W. 1049. Having issued the policy, and having collected and retained the premiums thereon, appellant is bound to pay the compensation provided by the policy under the proposition announced by Judge Sharp in this McCaleb case [132 Tex. 65, 116 S.W.2d 682]: "The insurer is estopped from denying the validity of the contract as to the employee where it collects and retains premiums thereon." The proposition of estoppel thus announced by Judge Sharp has no relation whatever to the proposition of estoppel condemned by the Supreme Court in the Inabnit case cited above. The Inabnit case simply denied estoppel as it related to the compensation act; Judge Sharp stated the effect of the estoppel as it relates to a common-law contract outside of the Workmen's Compensation Act. Our construction of the facts of this case as creating a common-law contract has affirmative support in the opinions of our Supreme Court and Commission of Appeals in Southern Casualty Co. v. Morgan, 12 S.W.2d 200, 16 S.W.2d 533.

We pretermit a discussion of appellant's propositions attacking the submission of the issue of L. C. Cupit's average weekly wage. The submission of this issue has support in the authorities, and is not condemned, as we understand the court's charge, by any authority.

While appellees plead their case as one arising under the Workmen's Compensation Act, and it was submitted to the jury on that theory, under the holding of our Supreme Court in the Morgan case, supra, appellees' petition was sufficient, being on all fours with the petition in that case, to present the issue of a common-law contract.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.