The HANOVER INSURANCE COMPANY, Appellant,

v.

Archie HOLLEMAN et al., Appellees.

No. 16237.

Court of Civil Appeals of Texas.

Dallas.

Oct. 25, 1963.

Rehearing Denied Nov. 15, 1963.

Brundidge, Fountain, Elliott & Churchill, L. E. Elliott, Dallas, for appellant.

Bailey & Williams and Clifford S. Dillard, Dallas, for appellees.

DIXON, Chief Justice.

Archie Holleman filed suit against American General Insurance Company, hereinafter called American, for workmen's compensation; and in the alternative against Hanover Insurance Company, hereinafter called Hanover.

Holleman alleged that he was injured while working as an employee of R. W. Mc-

Kinney, a general contractor engaged in road construction; and that American carried workmen's compensation insurance covering McKinney's employees.

In his alternative plea Holleman alleged that if it should be found that he was not an employee of R. W. McKinney at the time of his injury, then he was an employee of Wallace & Riddle, a partnership composed of A. J. Wallace and Hugh Dean Riddle, subcontractors, who were engaged by McKinney to do certain bridge and concrete work; and that Hanover carried workmen's compensation insurance covering Wallace & Riddle's employees.

There is no controversy about Holleman's injuries. He was injured August 14, 1958 on the job and his injuries are total and permanent. The question is: Which of the two insurance companies is liable for payment of Holleman's workmen's compensation?

Immediately following Holleman's injury American, as McKinney's insurer, began making weekly payments to Holleman and also paid large sums as medical and hospital expenses. The weekly payments by American continued for more than three years, but were discontinued in November 1961. American contends that Holleman was not McKinney's employee, but was Wallace & Riddle's employee, therefore American should not have made the weekly payments to Holleman, nor paid his medical and hospital bills, said payments being the legal obligations of Hanover as Wallace & Riddle's insurance carrier.

A jury verdict included these findings: (1) Holleman was not an employee of McKinney; (2) he was an employee of Wallace & Riddle; (3) which partnership was engaged in work at the time as an independent contractor for R. W. McKinney; (4) American, McKinney's insurance carrier, did not have ample opportunity to make a full investigation of the facts before it began making payments to Holleman; (5) American did not learn in 1958 of the terms and circumstances of Holleman's employment in which he was engaged when he was injured; (6) American was paid a premium by R. W. McKinney for the workmen's compensation policy issued by American based in part on wages paid by McKinney to Holleman for work done in the week ending August 16, 1958.

Based on the above findings the trial court rendered judgment in favor of Holleman against Hanover for $14,251.27 as compensation for total permanent disability. Part of the above recovery was for past due weekly payments for 218 weeks, part was a lump sum recovery for future payments of 183 weeks less discount. Holleman's attorney was allowed an attorney's fee.

The judgment further provided that Holleman take nothing against American. American had not pled for judgment over against Hanover for the amount paid by American to Holleman.

Only Hanover has appealed. Holleman has not appealed. In his brief he asks that the judgment against Hanover be affirmed. However in the alternative he presents a cross-point which he asks that we consider only if his judgment against Hanover should be reversed by this court. In that event he asks that we render judgment in his favor against American on the grounds that (1) there was a common law contract of insurance between American and McKinney for the benefit of Holleman; and (2) American, having paid compensation to Holleman for three years, is estopped to deny its liability in the absence of liability on the part of Hanover.

The testimony shows that Wallace & Riddle were in business for themselves as concrete bridge builders. Their services were engaged at a fixed price to build a bridge for McKinney, who had a contract with the State of Texas to build a road in Grayson County. They were engaged through one Hudnall, who was himself apparently a subcontractor, though his exact status is not altogether clear. In any event it is not denied that Hudnall had authority

to enter into an agreement with Wallace & Riddle in behalf of McKinney.

For the partnership Wallace had charge of the office. Riddle was actively in charge of the work in the field. Holleman had worked for Wallace on at least one other occasion. He was thereafter hired by Riddle as a truck driver and general handyman on the Grayson County job. Wallace & Riddle owned their own equipment, including the truck which Holleman drove. They hired and fired the men working under them and had control of the details of their activities.

Wallace & Riddle, being of limited financial resources, were agreeable to an arrangement whereby McKinney paid the expenses of Wallace & Riddle on the job, including the wages of Wallace & Riddle's employees. Riddle himself was carried on McKinney's books as "superintendent". He was paid $125.00 per week. However, this payment as well as other expenses paid by McKinney are referred to by Tucker, McKinney's office manager, as "advances" made by McKinney to Wallace & Riddle on the contract price and were charged against the partnership as such. The arrangement was that at the conclusion of the job McKinney would pay Wallace & Riddle the fixed price previously agreed on for building the bridge, less the total amount of the expenses which McKinney had advanced, the latter including the $125.00 paid each week to Riddle. However, the expenses so charged back against Wallace & Riddle did not include payroll premiums which McKinney paid to American on Wallace & Riddle's employees.

Wallace & Riddle carried their own workmen's compensation insurance with Hanover. They had paid the basic premium, though they did not thereafter pay additional premiums based on the weekly audits of their payrolls. At the beginning of the job Wallace & Riddle had furnished a certificate to McKinney, the general contractor, showing that they carried their own workmen's compensation insurance with Hanover.

Riddle prepared the payroll reports in the field and sent them to the office of Wallace & Riddle where they were further processed under the supervision of Wallace. Then the reports were sent to the office of McKinney where McKinney's checks signed by Tucker, the office manager, were issued payable to the employees of Wallace & Riddle, including Holleman. McKinney paid American the payroll premiums on Wallace & Riddle's employees. American received the payroll premiums based on weekly payroll recapitulations which did not list the names of the individual employees.

Tucker occupied a dual position. He was McKinney's office manager and he was also a recording agent for American.

Soon after Holleman sustained his injury American wrote to Hanover informing Hanover that American, as insurance carrier for McKinney, was starting compensation payments to Holleman. In this letter American further stated that it might look to Hanover as public liability insurance carrier for Wallace & Riddle should American's investigation reveal there was any negligence on the part of Wallace & Riddle.

Not long thereafter some doubt seems to have arisen on American's part as to whether Holleman was McKinney's employee or Wallace & Riddle's employee. This doubt is evidenced by a letter dated November 26, 1958 addressed to Henry Wilbourne, Hanover's Branch Claims Manager, by Herbert M. Johnson, American's Chief Supervisor, Claims Department. In this letter Johnson stated that from recent discussions between Hanover and American concerning responsibility for payment of workmen's compensation to Holleman, there seemed to be some confusion on Hanover's part as to whose employee Holleman was; that Hanover should state its position either that (1) Holleman was an employee of McKinney, or (2) was an employee of Wallace & Riddle; that if Hanover answered No. (2) in the affirmative, then Hanover should reimburse American for the $3,757.41 which it had spent on Holleman; that it was obvious that Holleman was covered under Han-

over's policy or under American's policy; and that if Hanover should fail to state its position in answer hereto, American would necessarily assume for all time as a matter of law that Hanover considered Holleman an employee of McKinney, otherwise Hanover would pay Holleman's compensation under the policy Hanover wrote for Wallace & Riddle.

The above letter was not answered by Hanover. American continued to make compensation payments to Holleman until November 1961. Holleman, after the payments were discontinued, filed an amended claim with the Industrial Accident Board. Thereafter he filed this suit.

## OPINION

In its first three points on appeal Hanover says that the trial court erred in not directing a verdict for Hanover on the undisputed evidence that (1) American issued its policy specifically to cover appellee Holleman; (2) McKinney agreed to carry the insurance on Wallace & Riddle employees and paid the premiums for carrying such risk to American and not to Hanover; and (3) American after investigation of the injury and facts with respect to Holleman's employment, and with knowledge of the facts, elected to accept the risk, received and retained premiums to which Hanover would otherwise have been entitled, and paid compensation for three years without further questioning its liability, and thereby estopped itself to deny liability to the prejudice of Hanover.

■ Hanover does not deny that Holleman was an employee of Wallace & Riddle at the time he was injured. It even concedes that he "was not technically an employee of McKinney". There is no real controversy in regard to this phase of his employment, for the jury found that Holleman was not an employee of McKinney, but was an employee of Wallace & Riddle. There was ample evidence to support the findings. Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522 (opinion

adopted by S.C.); Halliburton v. Texas Indemnity Insurance Co., 147 Tex. 133, 213 S.W.2d 677.

■ The Workmen's Compensation Act extends benefits only to employees. Texas Employers Ins. Association v. Inge, 146 Tex. 347, 208 S.W.2d 867, 869–870; Art. 8309, Sec. 1, Vernon's Ann.Civ.St. It is established in this case that Hanover had issued a workmen's compensation policy to Wallace & Riddle covering the partnership's employees, that Hanover had received the basic premium when the policy was issued and that the policy was in full force and effect when Holleman was injured while in the course of his employment as an employee of Wallace & Riddle. Therefore we hold that Holleman was covered by the workmen's compensation policy issued by Hanover to Wallace & Riddle.

■ The general rule is that a plea of estoppel cannot be used for the purpose of enabling the Industrial Accident Board to acquire jurisdiction over a case where no jurisdiction in fact exists. Neither can jurisdiction be conferred on the Board by agreement of the parties. Southern Surety Co. v. Inabnit, 119 Tex. 67, 24 S.W.2d 375, 377 (opinion adopted by S.C.); Hill v. Georgia Casualty Co., Tex.Com.App., 45 S.W.2d 566; Superior Ins. Co. v. Kling, 160 Tex. 155, 327 S.W.2d 422. Since this is an appeal from an award of the Industrial Accident Board, no judgment can be rendered here against American under the Workmen's Compensation Act either on a plea of estoppel or on an alleged agreement of the parties.

Hanover seeks to apply the doctrine of estoppel here on the authority, among others, of Superior Insurance Co. v. Kling, 160 Tex. 155, 327 S.W.2d 422; Federal Underwriters Exchange v. Cupit, Tex.Civ. App., 172 S.W.2d 105; and Federal Underwriters Exchange v. Walker, Tex.Civ.App., 134 S.W.2d 388.

The holdings in the above three cited cases are not applicable here. In the Kling

and Cupit cases judgment was rendered in favor of the named beneficiaries on the ground that the insurance policies, though not enforceable under the Workmen's Compensation Act, would be enforced as common law contracts between the contracting parties for the benefit of third parties, the named beneficiaries. The named beneficiaries in the Kling and Cupit cases did not have coverage under another policy, a workmen's compensation policy, as does Holleman in this case.

In the case now before us it cannot seriously be contended that the policy issued by American to McKinney was a third party contract entered into between American and McKinney for the benefit of Hanover. The only person who could plead estoppel as a third party beneficiary under a common law contract in this case would be Holleman. And Holleman has not appealed from the judgment in favor of American. He prays in the alternative that his plea of estoppel against American be considered only if we reverse his judgment against Hanover. Since we have concluded that Hanover is liable we need not consider Holleman's alternative plea.

Moreover, we fail to see how Hanover may properly escape its liability under the workmen's compensation policy it issued to Wallace & Riddle even if Holleman had one or more common law policies of accident insurance naming him as a beneficiary.

■ The situation presented in this case is that Hanover does not ask for any relief over against American. It seeks merely to appeal from the judgment against it in favor of Holleman. As we see it, the judgment in favor of American that Holleman take nothing against American is a matter between Holleman and American. It cannot be set up by Hanover as a ground for relieving Hanover of its liability, no matter how much Hanover may think that judgment should have been rendered against American.

The Walker case, above cited, is not in point either. It holds simply that insurance company was estopped to deny its liability to Walker, the named beneficiary who was injured. The case does not sustain a plea of estoppel in behalf of another insurance company. Moreover, it points out that the fact that Vincennes was only a nominal employer of Walker, could not affect the liability under the policy, because at that time companies writing workmen's compensation were not at liberty to select their risks and could not reject an application for insurance. But the law in that particular case has been changed. As pointed out by this court in Cooper v. American Employers Insurance Co., Tex.Civ.App., 368 S.W. 2d 952, the Legislature in 1953 amended Art. 8309, Sec. 2, V.A.C.S. so that now an insurance company is not required to issue a policy to any applicant applying for coverage except as provided under Art. 5.76 of the Insurance Code, V.A.T.S.

Appellant's first three points are overruled.

In its fourth point appellant asserts that the court erred in not disregarding Special Issues Nos. 3, 4, and 4–A because legally immaterial; and Special Issues Nos. 17 and 18 because without support in the evidence.

The jury found that (3) Holleman was not an employee of McKinney; (4) he was an employee of Wallace & Riddle; and (4–A) was injured while in the course of his employment. For reasons heretofore stated we think these issues and answers were material.

The jury also found that (17) American did not have ample opportunity to make a full investigation of the facts surrounding the nature, terms and circumstances of Holleman's employment before American began paying weekly compensation benefits to Holleman; and (18) American in the year 1958 did not learn of the terms and circumstances of Holleman's employment in which he was engaged at the time in question. We cannot say that there is no evidence to support these findings. In any event we believe they are immaterial in

view of the law applicable to the case under other findings of the jury. Appellant's fourth point is overruled.

The judgment of the trial court is affirmed.

Affirmed.

BATEMAN, J., not sitting.