**EMPLOYERS CASUALTY COMPANY, Appellant,**

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY, Appellee.**

**No. 7534.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 1, 1965.

Rehearing Denied Nov. 29, 1965.

293

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellant.

Simpson, Adkins, Fullingim & Hankins, Amarillo, for appellee.

DENTON, Chief Justice.

This suit is between Employers Casualty Company and American Employers Insurance Company to determine which of the two insurance carriers are liable for the benefits under the Workmen's Compensation Act for the death of Arthur R. Meathenia. The case was submitted to the trial court on stipulated facts. The court entered judgment holding Employers Casualty Company liable for all death benefits to the deceased's beneficiaries.

These two insurance carriers have by agreement shared the payments to the beneficiaries, but each reserved the right to litigate the ultimate question of liability. The beneficiaries have been paid in full and are not parties to this litigation. Employers Casualty Company will be referred to as Employers, and American Employers Insurance Company will be referred to as American Employers.

Throughout the year 1962 K. L. Towle Construction Company and K. L. Towle, Incorporated were separate corporations, each with its principal office in Hobbs, New Mexico. The two corporations officed in the same building but in different rooms, and each maintained separate sets of books. For convenience we will refer to K. L. Towle Construction as Towle Construction and K. L. Towle, Incorporated as Towle, Inc. K. L. Towle was president of both corporations, and the same auditor served both companies; but both corporations did not have identical officers and directors. Some of the officers and directors were common to both companies but not all. Employers carried the workmen's compensation insurance on the employees of Towle Construction, and American Employers carried the workmen's compensation insurance on the employees of Towle, Inc. From June 10, 1962, until the time of his death on August 31, 1962, Meathenia was carried on the payroll of Towle, Inc. During this period his wages were reported to American Employers and not to Employers for workmen's compensation purposes; and premiums computed on his wages were paid to American Employers and not to Employers. Both Towle Construction and Towle, Inc. had contracts with El Paso Natural Gas Company for construction of a pipe line. The contracts defined the amounts to be paid for the particular services to be rendered by each of the companies. During the period from August 27 to August 31, 1962, which includes the date of Meathenia's death, the work was being done under El Paso's contract with Towle Construction. Meathenia's wages during this five-day period were charged on the books of Towle Construction, and Towle, Inc. was reimbursed by Towle Construction for the wages thus paid during that five-day period. During this same period a third company, K. L. Towle Trucking Company, was solely owned by K. L. Towle; but it has no connection with the present controversy.

Delmar Crossland acted as foreman for all three Towle companies. He served as foreman for the three companies from time to time, and his wages were handled in the same manner as was Meathenia's described above. During the month of August of 1962 Crossland was carried on the payroll of Towle Construction. On August 27 Crossland sent Meathenia to a rock pile near Shamrock, Texas, with a Huff Payloader and instructed him to take the machine and load trucks with rocks to be used in making water crossings. Crossland did not tell Meathenia how to load the rocks as he was an experienced operator, but he did instruct him to stay away from the walls of the pit and to get the loose rocks. The record does not show which company owned or controlled the payloader. This work by Meathenia was charged by Crossland to Towle Construction. Crossland, who had the authority to hire and fire employees of either company, including Meathenia, was the only person in direct control of Meathenia at the time of his death, which occurred while performing the duties previously mentioned.

In response to a request, the trial court found the stipulations of the parties to be its findings of fact and conclusion as a matter of law: Meathenia was an employee of Towle Construction at the time of the accident; that at such time Meathenia was doing work for Towle Construction pursuant to its contract with El Paso Natural Gas Company; that Delmar Crossland was an employee of Towle Construction during August of 1962; that Crossland had the right of control over Meathenia as to details of the work he was performing at

the time of his fatal accident; and that American Employers was not estopped to deny that it owes workmen's compensation benefits to Meathenia's beneficiaries.

Appellant's contentions are: (1) since Meathenia was an employee of Towle, Inc. and American Employers was the compensation carrier for that company and obligated to pay the benefits unless the loaned employee principle has application. It asserts the loaned employee principle does not apply because the stipulated facts do not show an agreement transferring control of Meathenia from Towle, Inc. to Towle Construction; (2) That since Meathenia was on Towle, Inc.'s Payroll and American Employers received premiums on these wages, it had a contractual liability to pay the death benefits; (3) American Employers is estopped by its receipt and retention of the premiums to deny its liability; that alternatively American Employers is barred from a recovery from Employers; (4) American Employers had not sustained its burden of proof.

■ The primary question is which of the two insurance carriers is liable for payment of the death benefits to Meathenia's beneficiaries. This question involves the manner of direction and control exerted over Meathenia by the employers. The special or borrowed employee principle is applicable in workmen's compensation cases as well as in common law cases involving personal injuries to servants or employees. Insurors Indemnity & Ins. Co. v. Pridgen, 148 Tex. 219, 223 S.W.2d 217; Texas Employers' Ins. Ass'n v. Baker (Tex.Civ. App.), 278 S.W.2d 419; Hanover Ins. Co. v. Holleman (Tex.Civ.App.), 372 S.W.2d 554, (Refused, NRE); Texas Employers' Ins. Ass'n v. Neely (Tex.Civ.App.), 189 S.W.2d 626.

■ When the question whether an employee is a general or special employee is raised, the determination hinges on the authority and control over that employee under the facts of the particular case. In-

surors Indemnity & Ins. Co. v. Pridgen, supra. The Workmen's Compensation Act extends benefits only to employees or their beneficiaries. Article 8309, Section 1, Vernon's Ann.Civ.St. In discussing the term "employee" under the Act, the Commission of Appeals in Shannon v. Western Indemnity Co., 257 S.W. 522 (Opinion Adopted), used the following language:

"* * * whatever the position occupied by the person employed, he must, in order to come within the provisions of the law, be 'in the service of another.' * * * The authorities seem to be practically in accord in holding that to constitute one an 'employé' in the meaning of the compensation laws, there must exist between the parties the relation of master and servant, in the broad sense that the one has the right of ultimate control and direction over the other."

■ It is stipulated by the parties here that the work being performed was pursuant to the contract between Towle Construction and El Paso Natural Gas Company. Meathenia was performing work for Towle Construction which that company had obligated itself to do under its contract with El Paso Natural Gas. This has been held to be a material element of the borrowed servant doctrine. Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94; Dempster Mill Mfg. Co. v. Wiley (Tex. Civ.App.), 131 S.W.2d 257 (Dis., Judg. Corr.), and cases therein cited. As previously stated, another material element is the extent of control and direction over the employee. Under the stipulated facts of this case Crossland was the sole supervisor of the work. Crossland was an employee of Towle Construction and was paid by that company. He instructed the deceased to take the payloader and load trucks with rocks, but did not give him specific instructions as to the operation of the machine as Meathenia was an experienced operator. Crossland simply instructed him to stay away from the walls of the pit and to

get loose rocks. Crossland was the only person in direct control of Meathenia, and at the time of the latter's death, he had the right to hire and fire employees of either company, including Meathenia. The work done beginning on August 27, 1962 and ending August 31, 1962 was billed to El Paso by Towle Construction under its contract. Meathenia's time during this period was charged to Towle Construction, and Towle, Inc. was reimbursed by Towle Construction for the wages paid by Towle, Inc. to Meathenia for his services during this five-day period. There is nothing in this record to show Towle, Inc. had a right to control nor did it in fact give instructions on the work being performed under Towle Construction's contract.

■ Obviously the arrangement under which the three Towle companies operated was an unusual one. Crossland, as foreman of each company, wore "three hats". Separate contracts were obtained by the various companies, and their books were separately maintained. The work of each company was distinctly separated from the others, and the income and expenses of each was accounted for. The only factors tending to designate Meathenia an employee of Towle, Inc., who carried workmen's compensation insurance with American Employers, was the stipulated fact that he was carried on the payroll of Towle, Inc. and that premiums on his earnings during the specified five-day period were paid to American Employers. In our opinion these are not controlling. Magnolia Petroleum Co. v. Francis (Tex.Civ.App.), 169 S.W.2d 286, (Writ Refused). This is particularly true in light of the other elements already discussed. Although Meathenia's wages were included in the base upon which compensation premiums were determined and paid to American Employers, he was not listed as an employee. No specifically named employee is covered by the policy. American Employers' policy was issued for the purposes of covering employees of Towle, Inc. when working in the scope of their employment with Towle, Inc. Under the stipulated facts of this case Meathenia did not come within that coverage. Under the named authorities and stipulated facts, we are of the opinion, and so hold, Meathenia was an employee of Towle Construction at the time of his fatal accident and that Towle Construction's insurance carrier, Employers, is liable for the death benefits.

■ Employers next contends that whatever might be its strict liability under the Workmen's Compensation Act, American Employers is liable by a special contract to pay death benefits. The argument is that since American Employers received and retained premiums computed on the wages paid Meathenia during this period, they are liable for benefits under the Act. In support of this contention Employers cites and relies on Superior Ins. Co. v. Kling, 160 Tex. 155, 327 S.W.2d 422. That case held the son of a deceased partner was not an employee within the Workmen's Compensation Act, but there was sufficient evidence to sustain implied findings that the insurer knew the son was part owner of the father's estate; and that the insurer expressly contracted with the son that he was to be insured according to the terms and benefits of a policy. That case is distinguishable from the instant case. American Employers made no contract with Meathenia that he be insured, and the policy in question contained no rider or provision that it would insure persons who are not otherwise covered under the Workmen's Compensation Act. No express or implied contract appears in this record. We are of the opinion the Kling case is not authority for the application of the doctrine of estoppel in the present case. The Kling case applied estoppel between the insurance carrier and the insured. Estoppel was there asserted by the insured. Here Employers, an insurance carrier, is attempting to invoke the principle against another insurance carrier. A similar question was decided contrary to Employers' contention in Hanover Ins. Co. v. Holleman, supra. In substance, that case held the only one who

could plead estoppel as a third party bene-ficiary would be the employee himself. It rejects the estoppel theory as between two insurance carriers.

 Employers also takes the position American Employers can not recover from Employers one-half of the benefits it has paid because American Employers has not sustained its burden of proof. The case was submitted wholly on stipulated facts. Burden of proof is not a factor under this state of the record. It was simply the duty of both the trial court and this court to de-termine the legal effect of those stipulated facts. Appellant's last point of error is without merit.

The judgment of the trial court is af-firmed.