**COMMERCIAL STANDARD INSURANCE CO., Appellant,**

v.

**Roy L. WHITE, Sr., et ux., Appellees.**

**No. 7762.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 4, 1967.

Rehearing Denied Jan. 8, 1968.

Cade & Bowlin, James O. Cade, Lubbock, for appellant.

R. H. Munsterman, Levelland, for appellees.

CHAPMAN, Justice.

Commercial Standard Insurance Company filed suit in the trial court to set aside a Compromise Settlement Agreement entered into between an agent of the insurance company and Mr. and Mrs. Roy L. White, Sr., because of mutual mistakes in executing the Settlement Agreement, failure of consideration, non-existence of a Workmen's Compensation policy furnishing the basis of the settlement, and lack of jurisdiction of the Industrial Accident Board to validate the agreement by approval.

The Compromise Settlement Agreement was entered into between the adjustor of the company and Mr. and Mrs. Roy L. White, Sr., parents of Roy L. White, Jr., a single minor who was killed by electricity while an employee of Turner Popejoy, an electrical contractor. The adjustor for Commercial Standard, Jerry Drummond, signed the Compromise Settlement Agreement for the insurance company under the mistaken belief that the employer, Turner Popejoy, carried Workmen's Compensation insurance with his company. He was so advised by Murry Stewart, agent for the employer in securing coverage for him. However, we do not believe he could be considered as the agent of any of the parties to the purported contract of settlement. Popejoy's only employee was Roy L. White, Jr.

Before it was discovered that Popejoy's insurance on his electrical contracting operation consisted (so far as the written record shows) of a

"5,000.00–10,000.00 ............Employer's Liability

50,000.00–100,000.00 ......Comprehensive Bodily Injury Liability

25,000.00 ...............Comprehensive Liability Property Damage"

policy, rather than a Workmen's Compensation policy, the Compromise Settlement Agreement was entered into and attempted to be approved by the Industrial Accident Board. This, despite the fact that the Board, by letter to Popejoy and a copy to Commercial Standard, had previously advised such parties that its records did not reflect that Popejoy was a subscriber under the Workmen's Compensation Insurance Act, or Commercial Standard was the carrier writing the policy for Popejoy.

The case was submitted to a jury, which found that Commercial Standard had demanded and accepted premium payments from the employer in an amount sufficient to have purchased a Workmen's Compensation policy covering his employees; that in so doing the insurance company falsely represented to Popejoy that his employees were so protected; that Commercial Standard made such representation with knowledge that such a policy had not been in fact issued; that the insurance company's acts, representation, conduct or silence, led Popejoy to believe he had Workmen's Compensation; that a reasonably prudent person in Popejoy's position would have believed his employees to be so protected; that Commercial Standard failed to call Popejoy's attention to the rider deleting compensation from the policy; that the demand for premiums in an amount sufficient to purchase compensation insurance was made with the intention that Popejoy rely on such demand; that Popejoy did so rely and that such reliance led to damages to the Whites.

A motion for peremptory instruction was made following the close of the testimony and a motion for judgment n.o.v. and for a new trial after the verdict, raising the various legal questions which are raised by this appeal. Such questions were also raised in appellant's objections to the court's charge.

Appellant groups its first three points for argument. They assert the trial court erred in overruling its motion for peremptory instruction and for judgment n.o.v. when there was no evidence that the employer had a Workmen's Compensation policy with Commercial Standard, the Com-

promise Settlement Agreement was without consideration, and was executed by all parties under an honest, mutual mistake of fact, and the great weight and preponderance of the evidence is against the verdict.

Prior to any insurance coverage with Commercial Standard, Popejoy had insurance coverage for his electrical business with Mid-Continent Casualty Co. Murry Stewart, the broker who procured the above described coverage for Popejoy, became owner of a local insurance agency in Sundown in 1962. At that time, Popejoy had coverage with Mid-Continent, which he renewed during the time Stewart owned the local insurance agency. In 1964, Mid-Continent was no longer doing business in Texas. They could not renew Popejoy's coverage, which had been Employer's Liability during its entire history. He had never had Workmen's Compensation coverage with them.

Appellees very ably pleaded their case in an effort to bring it within some of the doctrines announced in McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S.W. 2d 679, 682; Federal Underwriters Exchange v. Cupit, 172 S.W.2d 105, Tex.Civ. App., Beaumont, 1943 (writ refused w.m.); and Superior Insurance Co. v. Kling, 160 Tex. 155, 327 S.W.2d 422. However, they pleaded that Murry Stewart was the authorized agent of Commercial Standard, a fact not proven by the record. The trial court found otherwise, and we believe properly so.

The record was without contradiction that Mr. Stewart never had power or authority at any time to write either Workmen's Compensation or Employer's Liability policies on behalf of any insurance company, and particularly, Commercial Standard. It is also uncontradicted that Stewart was the agent for Popejoy in securing his insurance coverage. The latter never, at any time, had any dealings with Commercial Standard nor with any of its agents with authority to write either Workmen's Compensation or Employer's Liability policies. It is important to note that the trial court charged the jury that any agent or broker, such as Stewart in this case, is deemed agent of the insured in procuring a policy and the insurer is not bound by his acts nor the knowledge acquired by such broker in the transactions. The authorities support the court's charge in that respect. Automobile Insurance Co. of Hartford, Conn. v. Buie, 252 S.W. 295, Tex.Civ.App. San Antonio, 1923 and the authorities there cited on the point; Retailers' Fire Insurance Co. v. Jackson Gin Co., 10 S.W. 2d 799, Tex.Civ.App. Amarillo, 1928 (writ dismissed).

The facts of our case distinguish it from the cases last cited. In the McCaleb case, it was held that even though the Workmen's Compensation Act did not, at that time, apply to cities and their employees, the city could take out an insurance policy in an old line insurance company for the benefit of its employees, adopting the provisions of the Act as the standard for which the amount to be paid to the employee should be computed.

The Supreme Court held that: "When the provisions of the policy are considered as a whole, in connection with all the facts and circumstances surrounding the issuance and acceptance of same, the subject matter of the contract, and the purpose the parties had in mind at the time, it clearly appears that the insurance company and the city had certain main objects in view * * *"; and among those was that the benefits to be paid would be equal to the benefits provided by the Workmen's Compensation Act, whereas the subject matter of the contract here provided "* * * all provisions of the policy relating solely to coverage A are deleted". Coverage A was Workmen's Compensation. The record is completely void of any contract, oral or written, of Workmen's Compensation coverage. Additionally, in considering "all the facts and circumstances surrounding the issuance and acceptance" of the policy, we find that Popejoy authorized his agent, Stewart, to procure coverage such as he

previously had with Mid-Continent, which was Employer's Liability.

We are not unmindful here that appellees urge there was an oral contract to insure, but there simply is not any evidence to support such a theory. Mr. Popejoy said he thought he was covered by Workmen's Compensation.

"Q. And you assured them (the Whites) that he was covered by workmen's compensation, I suppose?

A. I assured them that he was insured.

Q. But you took that in your mind to mean workmen's compensation?

A. According to the policy it would look like it, but I just said—

Q. You were led by the policy to believe that you had workmen's compensation?

A. That would be the first impression to look at it."

█ Mr. Popejoy never, at any time, talked with any agent of appellant with authority to contract orally or otherwise for Workmen's Compensation coverage. The policy was written on the "Standard Workmen's Compensation and Employers' Liability" policy, with Workmen's Compensation deleted. Mr. Popejoy had a copy of the policy. Mrs. White saw it at his place of business. All they would have had to do was read it to see that there was no Workmen's Compensation coverage. We do not believe the fact that Mr. Popejoy's "first impression in looking at the policy" was that it was Workmen's Compensation coverage and that the parents of the deceased "understood" their son was covered by Workmen's Compensation could make an oral contract for coverage in the absence of some legal duty of Commercial Standard to advise them the nature of the coverage or a legal duty arising out of its refusal to advise them. Clearly, under the court's charge, Stewart's actions or refusal to advise Popejoy the coverage he had purchased for him was not binding on appellant.

The notices sent to the oil companies for whom Popejoy's company did electrical work showed "Workmen's Compensation and Employers' Liability" under "Type of Insurance" but they also showed there was no Workmen's Compensation coverage, nor coverage in the nature thereof, because they also showed a $5,000.00 limit of recovery for each person. The record may show that Popejoy's agent, Stewart, purchased poor coverage for the one employee for the price Popejoy paid, but appellant is not responsible for Stewart's lack of judgment.

The witness, Paxton, testified there was enough charge for coverage to pay for both Workmen's Compensation and Employers' Liability, but he admitted that he had not been told there was also a Comprehensive General insurance policy issued in connection with the premiums paid.

█ We do not believe the fact that appellant accepted premiums sufficient to pay for Workmen's Compensation coverage legally estopped it from denying such actions when it is shown, as it is in this record, that such premiums were applied to Comprehensive General Bodily Injury coverage shown to have been purchased.

In the Cupit case the insurer specifically agreed to insure employees of an independent contractor under the terms of the Compensation Act, and the partnership contracting with the independent contractor paid the policy premiums, which were accepted as such by the insurer. Our record is completely void of any agreement by the insurer to bind itself under any coverage other than that shown in the written contract between it and Popejoy. The Kling case allowed recovery for an employee of a cotton gin, who also owned a ⅛ interest in the gin company, because the insurance company knew of that ownership when it wrote the policy. The Court held it was estopped to deny recovery because it ac-

cepted premiums knowing the employee owned an interest in the gin. We do not see any analogy in that case and ours.

If there was any obligation on the part of Stewart to advise Popejoy the nature of his coverage that obligation can not be imputed to appellant in this case under the record evidence and the court's charge.

Therefore, the issues inquiring of the jury if there were demands upon Popejoy by the insurance company sufficient to pay for Workmen's Compensation, if there was conduct or silence which led Popejoy to believe he had Workmen's Compensation coverage, and if the company advised him he did not have such coverage are either immaterial or there is no evidence to support them. The other issues based upon such inquiry would also be immaterial. It is agreed by all parties that the premiums were sufficient to pay for Workmen's Compensation but instead of purchasing that coverage, Popejoy's agent, Stewart, purchased a $5,000.00 to $10,000.00 limit Employers' Liability policy and a Comprehensive General Liability policy with $50,-000.00 to $100,000.00 limits on bodily injury and $25,000.00 limits on Property Damage Liability. Popejoy had the policy before him showing the coverage. No appellate court, so far as we know, has written a Workmen's Compensation policy by judicial decree for a claimant under a statement of facts such as we have here.

The appellees contend the Compromise Settlement Agreement is sufficient within itself to support the judgment regardless of any Workmen's Compensation coverage or coverage in the nature thereof. They say: "The theory of recovery based upon the enforcement of a Compromise Settlement Agreement will, standing alone, sustain the judgment of the trial court." This question is one of considerable difficulty and as to its proper solution, we admit to some doubt.

The only case cited by appellee on this particular question is Liberty Mutual Ins. Co. v. Martinez, 407 S.W.2d 272, Tex.Civ.

App. El Paso, 1966, no writ history. In that case the trial court, the fact finder, found the agreement and release were not the result of mutual mistakes. Here, it is uncontroverted that the Compromise Settlement Agreement was entered into as a result of mistakes on the part of all signatories to the Compromise Settlement Agreement recognizing that Popejoy had Workmen's Compensation coverage on his employees.

Mr. White's deposition testimony introduced into the record without objection shows he signed the Compromise Settlement Agreement under the belief there was a Workmen's Compensation policy, and if there was not one, then he was mistaken. Clearly, there was not one.

Mrs. White testified she was under the impression her son was covered by Workmen's Compensation insurance because she had seen the policy. The only other party to the contract was Jerry Drummond. He testified he and "everybody there" thought there was Workmen's Compensation insurance coverage and that he certainly would not have signed the Compromise Settlement Agreement if he had not thought so. He testified further that Murry Stewart, who had procured the policy as agent for Popejoy, told him there was a Workmen's Compensation policy on the White boy and he relied on that statement. Therefore, under this state of the record, we see no escape from the fact that the subject instrument was signed by all parties under a mutual mistake of fact.

None of the cases cited in the briefs furnish us much satisfaction with respect to the legal result of the mutual mistake of fact. Therefore, we have been forced to resort to general principles of equity and contract law. There are many authorities that hold, directly or by dicta, that equity will intervene to set aside contracts entered into under a mutual mistake of fact. In Travelers' Insurance Co. v.

Jones, 32 Tex.Civ.App. 146, 73 S.W. 978, 1903 (writ refused) the court said:

"The execution and delivery of the policy by the insurance company in accordance with the written application evidence a completed transaction, and constitute a contract between the parties. *In order to have the contract set aside on the ground of mistake, the mistake must have been mutual, and the party must seek relief, without delay, upon discovering it.*" (Emphasis added.)

In our case the mistake was mutual and relief was sought without delay.

The Compromise Settlement Agreement shows within its body that it was the settlement of a Workmen's Compensation claim. Since there was not any Workmen's Compensation coverage: "* * * the contract furnished within itself the evidence of the mistake." This quote just made was the Supreme Court's answer to a complaint of another court's holding that inserting $26.00 for $13.00 in a note could be corrected. The Supreme Court observed that the note made the by-laws a part thereof. Such by-laws prescribed that a shareholder should pay $1.00 per month on each share of stock, and there being 13 shares, would make $13.00 per month to be paid. Abbott v. International Building and Loan Association, 86 Tex. 467, 25 S.W. 620 (Sup.Court 1894).

"A mistake which equity would relieve against must ordinarily be a mutual one." International Life Insurance Co. v. Stuart, 201 S.W. 1088, Tex.Civ.App., Fort Worth 1918, citing Abbott v. International Building and Loan Association, supra.

■ "A mutual mistake is one common to both parties to the contract, each laboring under the same misconception". Anderson Brothers Corporation v. O'Meara, 306 F.2d 672, 5th Circuit, 1962; St. Paul Fire & Marine Insurance Co. v. Culwell, 62 S.W.2d 100, Commission of Appeals, Sec. A 1933; Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447, Commis-

sion of Appeals, Sec. B, 1935 (opinion adopted); Earp v. First State Bank of Abilene, 356 S.W.2d 178, Tex.Civ.App., Eastland, 1962 (writ refused n.r.e.). Therefore, equity requires that the mutual mistake be corrected unless the Compromise Settlement Agreement must be upheld for some other reason.

■ We still are faced with the legal principle that to afford relief in equity on the grounds of mistake, the mistake must ordinarily not be due to negligence on the part of the petitioner. 13 T.J.2d Page 482, Sec. 258 and cases there cited.

The evidence is not of such nature that we feel justified in holding, as a matter of law, that there was negligence shown on the part of the insurance company in signing the Compromise Settlement Agreement. This negligence such as to avoid the equitable results of a contract entered into by mutual mistake is not a question upon which the trial court could make implied findings.

■ The theory of recovery for mutual mistake is separate and distinct from the theory of estoppel to deny Workmen's Compensation coverage (or coverage of such nature) upon which the case was submitted. "The power of the judge to make findings where none are submitted or requested does not extend to independent grounds of recovery or defense, but only to incidental or subsidiary findings necessary to support the judgment in connection with the issues in fact submitted to and found by the jury." Citizens' National Bank of Brownwood v. Texas Compress Co., 294 S.W. 331, Tex.Civ.App., Austin, 1927 (writ refused).

■ Since appellant clearly established that the Compromise Settlement Agreement was signed under a mutual mistake of fact it evolved upon appellees to avoid the equitable results flowing therefrom by proving and securing a finding that such mistake resulted from appellant's lack of proper care, indifference, or neglect, or

some other defense thereto. Having not done so, we believe the issue is waived. "A party may waive an issue upon which he relies for recovery or defense, by failing to request its submission. * * * In such case, if the party has failed to request for submission such issue, or issues, as will sustain his action or defense, he has not met the burden placed upon him by law, and no waiver can be imputed to the other party for such failure. For instance, in the case of Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S.W. 902, it was held that the issue of limitation not having been submitted or requested, the trial court did not have the power, under the statute, to make such findings in order to sustain the judgment of the trial court." Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

As a general rule, a party waives an issue upon which he relies by failing to request its submission. Rule 279 V.A.T.R., Lincoln County Mutual Fire Insurance Co. v. Goolsby, 240 S.W.2d 402, Tex.Civ.App., (Texarkana 1951); Rodriguez v. Higginbotham-Bailey-Logan Co., 172 S.W.2d 991, Tex.Civ.App., San Antonio 1943 (writ refused). This is true unless the defense relied on is established as a matter of law. Texas Prudential Insurance Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242. Here, we do not believe it was so established. The issue was one appellees needed to prevail. Having not requested its submission, we must assume it was waived.

Our holdings herein can not properly be said to deny the appellees a right of recovery for the death of their son if the facts justify such recovery against Popejoy, or any other person or entity guilty of any negligent acts, or failure to act, proximately resulting in his death. We just do not believe we would be justified in holding that the Whites' or Popejoy's belief or understanding that the boy was covered by Workmen's Compensation may legally bring such coverage into existence under the facts of this case.

Such holdings make it unnecessary to write on the other points. Accordingly, the judgment of the trial court is reversed and rendered.